**SIMA PRODUCTS CORPORATION, an Illinois Corporation, et al., Plaintiffs-Appellants,**

v.

**Dr. John McLUCAS, Administrator, Federal Aviation Administration, Defendant-Appellee.**

No. 78–2500.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 24, 1979.

Decided Jan. 3, 1980.

---

Ray Jeffrey Cohen, Chicago, Ill., for plaintiffs-appellants.

Curtis J. Wilder, Federal Aviation Admin., Chicago, Ill., for defendant-appellee.

Before SWYGERT, PELL and BAUER, Circuit Judges.

SWYGERT, Circuit Judge.

Plaintiffs-appellants Sima Products Corporation and its president, Irvin Diamond, brought this action in the district court, seeking declaratory relief against an amendment to a regulation, 14 C.F.R. § 121.538a(e) (1978), promulgated by the Federal Aviation Administration ("FAA") under certain sections of the Federal Aviation Administration Act, 49 U.S.C. §§ 1356, 1357 ("the Act"), and 14 C.F.R. §§ 121.1(a),

121.538. Plaintiffs challenge the legality of the amendment on both procedural and substantive grounds. The district court dismissed the complaint for lack of subject matter jurisdiction, holding that jurisdiction to review the amendment issued by the FAA lies exclusively in the courts of appeals under section 1006(a) of the Federal Aviation Act, 49 U.S.C. § 1486. *Sima Products Corp. v. McLucas*, 460 F.Supp. 128, 134 (N.D.Ill.1978). We affirm.

## I

On March 5, 1975 the FAA promulgated an amendment to rule 121.538a which regulates the use of X-ray devices for the inspection of carry-on baggage and other items at airport security points. In relevant part, paragraph (e) of the amendment states that:

> No certificate holder [i. e., airport] may use an X-ray system to inspect carry-on baggage or items, unless a sign is posted in a conspicuous place which notifies passengers that such items are being inspected by an X-ray system and advises them to remove all X-ray and scientific film from their carry-on baggage and items before inspection. If the X-ray system exposes any carry-on baggage or item to more than one milliroentgen during the inspection, the certificate holder shall post a sign which advises passengers to remove film of all kinds from their carry-on baggage and items before inspection. If requested by a passenger, his photographic equipment and film packages shall be physically inspected without exposure to an X-ray system.

14 C.F.R. § 121.538a(e).[1] Pursuant to this rule, commercial airports have posted signs similar to those posted at the American Airlines and Northwest Airlines security points in the O'Hare International Airport, Chicago, Illinois, which state:

> X-ray baggage inspection.
>
> Carry-on baggage is being inspected by X-ray.
>
> Inspection will not affect ordinary undeveloped film.
>
> Remove all X-ray and scientific film from luggage.
>
> Physical inspection may be requested.

Approximately nine months before the rule was promulgated, a notice of the proposed amendment and rule making appeared in the *Federal Register. See* 39 Fed.Reg. 22275 (June 21, 1974). In response to this notice, the FAA received numerous comments including ones from scientific and technical organizations, film manufacturers, and an association of photographic suppliers. Plaintiffs Diamond and Sima Products Corporation, which manufacturers and distributes lead laminated containers that protect ordinary commercial film from the effects of X-ray machines, submitted written material to the FAA in opposition to the proposed amendment. They urged that the airport signs advise travelers that X-rays present a danger to all types of film. Along with the other responses, plaintiffs' comments were considered by the FAA and made part of the administrative record. *See* 14 C.F.R. § 11.-47(a). No evidentiary hearing was held prior to promulgating rule 121.538a.

On August 31, 1976 plaintiffs filed a petition with the FAA, requesting it to amend paragraph (e) so that passengers would be advised to remove all film from their carry-on baggage and items before inspection by an X-ray system.[2] *See* 14 C.F.R. § 11.25.

---

1. Paragraph (e) was amended on March 23, 1978 to expressly require that the sign "shall also advise passengers that they may request a physical inspection to be made of their photographic equipment and film packages without exposure to an X-ray system." 14 C.F.R. § 121.538a(e) (1979). The amendment is not at issue here.

2. Specifically, plaintiffs requested that the first two sentences of paragraph (e) of regulation 121.538a be amended to read as follows:

   No certificate holder may use an X-ray system to inspect carry-on baggage or items, unless a sign is posted in a conspicuous place which notifies passengers that such items are being inspected by an X-ray system and ad-

Plaintiffs argued that signs like the ones posted in the O'Hare airport are misleading, and contrary to both scientific fact and personal experience of the plaintiffs. Therefore, plaintiffs maintained, the rule allowing airports to erect such signs is arbitrary, capricious, and unreasonable. To support the allegations, plaintiffs offered a variety of exhibits, including copies of articles in publications, personal correspondence, and a sign posted in the Tokyo, Japan airport by a non-U.S. air carrier.

Four months later, having failed to receive a response to their petition, plaintiffs filed this suit in district court against Dr. John McLucas, the FAA Administrator.[3] Asserting jurisdiction under 28 U.S.C. § 1346, they requested that the district court declare rule 121.538a void as arbitrary and unreasonable and order the FAA to promulgate an amendment to the rule notifying air travelers that X-ray devices are not film safe. The suit was dismissed for lack of jurisdiction and this appeal ensued.

## II

At the outset, plaintiffs concede that the FAA fully complied with the notice procedures outlined in section 553 of the Administrative Procedure Act, 5 U.S.C. § 553, and that, in response to the notice of the proposed amendment and rule making that appeared in the *Federal Register*, they submitted written correspondence. Nonetheless, they argue that they never received a "true hearing" on the merits of their position and for this reason they are entitled to a hearing in the district court. The FAA opposes this position by contending that the explicit statutory language of section 1486 mandates that a determination as to the

vises them to remove all film from their carry-on baggage and items before inspection. The certificate holder shall post a sign which advises passengers that "This X-Ray Machine is not Film Safe" or in the alternative that X-ray inspection may affect undeveloped film.
Letter of March 29, 1977 issued by John L. McLucas, FAA Administrator, denying petition to amend § 121.538a(e). Appendix to brief of appellee at p. 1a.

3. In a letter issued on March 29, 1977, the petition to amend section 121.538a was denied.

unreasonableness or arbitrariness of the amendment may be made only by this court.

In granting the FAA's motion to dismiss for lack of subject matter jurisdiction, the district court relied on 49 U.S.C. § 1486. That statute provides in pertinent part that "orders" of the FAA "shall be subject to review by the courts of appeals of the United States or the United States Court of Appeals for the District of Columbia" and that "the court shall have exclusive jurisdiction to affirm, modify, or set aside the order complained of . . . ." 49 U.S.C. §§ 1486(a) and (d). For a variety of reasons plaintiffs contend that regulation 121.-538a(e) is not an "order" within the meaning of the section. However, we are unpersuaded.

First, plaintiffs urge that a literal approach to interpreting section 1486 be adopted by this court. It is argued that the special review statute does not apply to the FAA's action because it is labelled a "regulation," rather than an "order." This attempt to skirt the exclusive language of section 1486 is meritless because the term "order" for purposes of this statute should be construed more expansively than plaintiffs suggest. By adopting a liberal construction of "order," FAA actions which are the product of informal rulemaking, such as in this case, may be reviewed by courts of appeals, providing an adequate administrative record has been compiled by the agency. Both statutory and judicial authority support our interpretation of section 1486.

The term "order" is broadly defined in both the Federal Aviation Act, 49 U.S.C. § 1354(a)[4] and the Administrative Proce-

The FAA has provided this court with a copy of the Denial of Petition letter. Apparently, the letter was not part of the record in the district court. *See Sima Products Corp. v. McLucas, supra*, 460 F.Supp. at 130 n.1.

4. Section 1354(a) states:
The Administrator is empowered to perform such acts, to conduct such investigations, to issue and amend such orders, and to make and amend such general or special rules, regulations, and procedures, pursuant to and consistent with the provisions of this

dure Act, 5 U.S.C. § 551(6).[5] Moreover, the purposes of special review statutes—coherence and economy—are best served if courts of appeals exercise their exclusive jurisdiction over final agency actions. *See City of Rochester v. Bond*, 195 U.S.App.D.C. 345, 354, 603 F.2d 927, 936 (D.C.Cir. 1979).

In reaching our decision, we note that the District of Columbia Circuit Court has construed "order" for purposes of special review statutes expansively, to permit direct review of regulations promulgated through informal notice-and-comment rulemaking, such as in this case. *See, e. g., City of Rochester v. Bond, supra; Investment Company Institute v. Board of Governors of Federal Reserve System*, 170 U.S.App.D.C. 311, 551 F.2d 1270 (D.C.Cir. 1977); *Deutsche Lufthansa Aktiengesellschaft v. C.A.B.*, 156 U.S.App.D.C. 191, 479 F.2d 912 (D.C.Cir. 1973). *But see PBW Stock Exchange, Inc. v. SEC*, 485 F.2d 718 (3d Cir. 1973), *cert. denied*, 416 U.S. 969, 94 S.Ct. 1992, 40 L.Ed.2d 558 (1974).

█ Plaintiffs' second argument is that inasmuch as the X-ray device amendment was promulgated without the FAA conducting an evidentiary hearing, it cannot be an "order" within section 1486. Although at one time it was believed that regulations promulgated after informal rulemaking were not reviewable in the courts of appeals, *see United Gas Pipe Line Co. v. Federal Power Commission*, 86 U.S.App.D.C. 314, 181 F.2d 796 (D.C.Cir.), *cert. denied*, 340 U.S. 827, 71 S.Ct. 63, 95 L.Ed. 607 (1950), more recent decisions establish that the indicium of "orders" reviewable within the meaning of special review statutes is the adequacy of the agency record. In *Deutsche Lufthansa, supra*, 156 U.S.App. D.C. at 195, 479 F.2d at 916, in which the identical review statute raised in this case was interpreted, the court stated: "It is the availability of a record for review and not the holding of a quasi judicial hearing which is now the jurisdictional touchstone."

This approach, construing "order" to mean any agency action capable of review on the basis of the administrative record, was confirmed in *Investment Company Institute, supra*. There the District of Columbia Court explicitly rejected the notion that regulations promulgated after informal rulemaking were not reviewable, holding that "the general approach taken by *United Gas Pipe Line* is no longer good law in this circuit." *Id.* 170 U.S.App.D.C. at 317, 551 F.2d at 1276. The court articulated the purposes served by construing "order" in this fashion:

> . . . if the administrative record forms the basis for review, requiring petitioners challenging regulations to go first to the district court results in unnecessary delay and expense . . . and undesirable bifurcation of the reviewing function between the district courts and the courts of appeals . . . . (citations omitted.)

*Id.*, 170 U.S.App.D.C. at 317, 551 F.2d at 1276.

█ Plaintiffs further contend that the FAA's action is not an "order" for purposes of section 1486 because the facts adduced at the administrative level are in dispute. According to them, these questions of fact should be decided in the district court. This argument misses the point: a factual hearing before the district court judge is not necessary if judicial review is based on the agency record. *See Investment Company Institute, supra*, 551 F.2d at 1276, citing Currie & Goodman, *Judicial Review of Federal Administrative Action: Quest for the Optimum Forum*, 75 Colum.L.Rev. 1 (1975); Verkuil, *Judicial Review of Informal Rulemaking*, 60 Va.L.Rev. 185 (1974). Moreover, where fact-finding within the competence of the agency is required, section 1486(a) permits the case to be remanded to the agency for further factual development if the administrative record is inadequate for review. Under such circumstances it

---

chapter, as he shall deem necessary to carry out the provisions of, and to exercise and perform his powers and duties under, this chapter.

**5.** Section 551(6) defines "order" as "the whole or a part of a final disposition, whether affirmative, negative, injunctive, or declaratory in form."

makes no difference whether the reviewing court is a court of appeals or a district court, and "there seems to be no reason to inject another tribunal into the process." *Environmental Defense Fund, Inc. v. Hardin*, 138 U.S.App.D.C. 391, 396–397, 428 F.2d 1093, 1098–99 (D.C.Cir. 1970).

█ Plaintiffs' final argument in its attempt to escape from the applicability of section 1486 is that they, unlike the certificate holders (e. g., airports), were not directly affected by the promulgation of rule 121.538a and, thereby, they are in a too peripheral position to be subject to the statutory review section. A similar argument was raised and summarily rejected in *City of Rochester v. Bond, supra*, a case which construed the special review statute at issue here. The plaintiffs there, challenging a FAA decision that a certain radio antenna tower was not a hazard to air navigation, argued that the decision was reviewable in the district court because the plaintiffs were not parties to the proceeding from which the order at issue arose. Such a distinction, the court said, was immaterial: "Statutory review is, or at least if timely sought would have been, an adequate means of reviewing appellants' allegations." *Id.* 195 U.S.App.D.C. at 354, 603 F.2d at 936.

### III

█ In following the standard established by *Deutsche Lufthansa* and its progeny, we address the question of whether the administrative record compiled by the FAA in the course of its proceedings is adequate for review by a court of appeals.[6] If the FAA's record were inadequate to permit review directly in the court of appeals, we would be inclined to find that the action, although final, is not an "order" within the meaning of section 1486(a). *See Deutsche Lufthansa, supra.* However, we are not presented with that situation here. As plaintiffs concede, the FAA, in promulgat-

ing rule 121.538a(e), complied with the statutory rulemaking procedures prescribed in 5 U.S.C. § 553(c) and 14 C.F.R. § 11(B). No evidentiary hearing is required under these procedures. *Id.* Despite compliance with the letter of the law by the FAA, plaintiffs contend that the record compiled at the administrative level is sparse and incomplete. To support their position, they point to the record developed in the district court prior to the filing of the FAA's motion to dismiss, which contains evidence not adduced at the agency level. Such evidence includes answers to interrogatories by experts and representatives of various manufacturers which plaintiffs claim support their position.

We think the record that was made is a sufficient basis on which to conduct appellate review of the rule. We reach this determination by looking at the nature of the claim raised on appeal. Plaintiffs argue that the signs are misleading and, as such, rule 121.538a(e) allowing airports to permit the signs to be posted is arbitrary, capricious, and unreasonable. Examining the administrative record before us, we find that it includes the notice of the proposed amendment published in the *Federal Register*. The notice provided that comments should be submitted on the question of "[w]hether exposure to X-rays may harm photographic film . . . or other items which may be contained in carry-on baggage . . . and, if so, what measures should be taken to eliminate or reduce such possible harm other than or in addition to those set out in this proposal." 39 Fed.Reg. 22275, 22276. In addition to the plaintiffs, other parties submitted comments in opposition to the proposed amendment, which were made part of the agency record. The record also includes the promulgated rule and its published explanation. A record composed of such materials is adequate for

---

**6.** It is not suggested that the FAA's regulation is unripe. The district court held that rule 121.538a(e) meets the finality criteria, *see Puget Sound Traffic Ass'n v. C.A.B.*, 175 U.S.App. D.C. 410, 412, 536 F.2d 437, 439 (D.C.Cir. 1976). We agree. The regulation imposes spe-

cific obligations on certificate holders who, as the FAA points out, are subject to civil penalties under section 901(a) of the Federal Aviation Act, as amended, 49 U.S.C. § 1471, if a violation of the regulation occurs.

reviewing the appellants' claim. *See Rodway v. United States Dept. of Agriculture,* 168 U.S.App.D.C. 387, 514 F.2d 809 (D.C.Cir. 1975).

Plaintiffs' primary objection to this court's exclusive jurisdiction is that they will be unable to present to a court of appeals the additional evidence which they gathered subsequent to the promulgation of the rule. There are certain remedies provided for in section 1486 which should allay their concern. The August 31, 1976 petition to amend rule 121.538a(e) and the attached exhibits can supplement the administrative record. *See Investment Company Institute, supra,* 170 U.S.App.D.C. at 322–23, 551 F.2d at 1281–82. Additionally, section 1486(d) provides that if the administrative record is inadequate to determine the legality of the rule, the court of appeals can remand the case to the FAA for further fact finding proceedings.

In conclusion, we hold that plaintiffs must assert their claims in the court of appeals. According to section 1486(a), petitions for review of agency action must be "filed within sixty days after the entry of such order, by any person disclosing a substantial interest" in the action. The sixty-day limit is long past for the plaintiffs. We note that section 1486(a) empowers the court of appeals to permit late filing of petitions for review "upon a showing of reasonable grounds for failure to file the petition theretofore." The question of whether appellants have a legitimate excuse for selecting the wrong forum, however, is not before us at this time.

The decision of the district court dismissing plaintiffs' suit for lack of subject matter jurisdiction is affirmed.