See also 4 Cir., 719 F.2d 699.

**CITY OF ALEXANDRIA, a municipal corporation of Virginia, City Council of Alexandria, a body political of Virginia, Appellees,**

v.

**J. Lynn HELMS, Administrator, Federal Aviation Administration; James H. Wilding, Director, Metropolitan Washington Airports, Federal Aviation Administration; Federal Aviation Administration, Appellants.**

**CITY OF ALEXANDRIA and the County Arlington, Petitioners,**

v.

**FEDERAL AVIATION ADMINISTRATION, Respondent.**

**Nos. 83–1944, 83–1976.**

United States Court of Appeals, Fourth Circuit.

Argued Nov. 4, 1983.

Decided Feb. 28, 1984.

J. Carol Williams, Dept. of Justice, Washington, D.C. (Kenneth Weinstein, Dept. of Transp., Edward S. Faggen, Metropolitan Washington Airports, Federal Aviation Admin., F. Henry Habicht, II, Acting Asst. Atty. Gen., Gary B. Randall, Peter R. Steenland, Jr., Dept. of Justice, Washington, D.C., on brief), for appellants.

Abbe David Lowell, Washington, D.C. (Brand, Lowell, Nickerson & Dole, Washington, D.C., on brief), and Charles G. Flinn, County Atty., to the County Bd. of Arlington, Arlington, Va. (Cyril D. Calley, City Atty., for the City of Alexandria, Alexandria, Va., Eugene Gressman, Univ. of North Carolina School of Law, Chapel Hill, N.C., on brief), for appellees.

Before WINTER, Chief Judge, and PHILLIPS and ERVIN, Circuit Judges.

ERVIN, Circuit Judge:

In this consolidated case, the Federal Aviation Administration (FAA) appeals from a preliminary injunction entered by the United States District Court for the Eastern District of Virginia preventing the FAA from conducting flight pattern tests for flights departing Washington's National Airport. Additionally, the City of Alexandria and County Board of Arlington County petition for review of the FAA order to implement the flight pattern tests. In an order entered November 8, 1983, we reversed the judgment of the district court and remanded with directions to dismiss for want of jurisdiction. We also denied the petition for review and affirmed the FAA order. We now set forth the reasons for these rulings.

I.

In response to a May 19, 1981 request by the Metropolitan Washington Council of Governments, the FAA initiated plans to determine whether the flight paths of certain turbo jets departing Washington National Airport should be permanently altered. The flight plan under consideration by the FAA (also referred to as the scatter plan) calls for some departing turbo jets to turn off their flight route along the Potomac River earlier after take-off than they

currently turn. The purpose of the plan is to distribute aircraft noise as equitably as possible among affected localities by permitting some jets to fly over previously unaffected areas of Alexandria and Arlington, thus relieving other localities from a concentration of noise. The FAA estimates that "the proposed test would increase the residential population subject to 30 seconds or more of 75 db aircraft noise per day from 551,000 to 871,000."[1] The affected population would be spread over a larger geographic area.

In accordance with its regulations, the FAA prepared an environmental assessment of the test which it published on May 31, 1983, and distributed to 200 people, including the Alexandria City Manager. Public comment on the assessment was received through July 20 and a response to that comment was published in August. Because it concluded the test was not a major federal action significantly affecting the environment, the FAA did not prepare an Environmental Impact Statement.

On August 30, 1983, the Administrator of the FAA authorized testing of the scatter plan for 90 days between September 15, 1983 and January 15, 1984. The City of Alexandria and the County Board of Arlington County filed complaints challenging the FAA's conclusion that implementation of its test did not require preparation of an Environmental Impact Statement (EIS). The local governments additionally alleged that the FAA had acted arbitrarily and had violated the Administrative Procedure Act. They moved the district court for a preliminary injunction and at the same time petitioned for review of the FAA's order in this court.

On September 30, 1983, the district court temporarily enjoined the FAA from con-ducting the scatter plan test that was scheduled to begin on October 14. Pursuant to Federal Rule of Appellate Procedure 8(a), the FAA filed a motion before a single circuit judge to stay the district court injunction pending appeal. The motion to stay was granted, 719 F.2d 699. Alexandria and Arlington moved to vacate the stay, and we considered that motion together with the FAA's appeal from the district court's preliminary injunction. We also ruled on the local governments' petition for review of the FAA order.

## II.

The threshold question is whether the district court properly exercised jurisdiction when it issued the preliminary injunction. 49 U.S.C. § 1486(a) provides that

> Any order, affirmative or negative, issued by the Board or Administrator [of the FAA] under this chapter ... shall be subject to review by the courts of appeals of the United States or the United States Court of Appeals for the District of Columbia ....

This provision vests review of FAA orders exclusively in the Courts of Appeals. *E.g. City of Rochester v. Bond,* 603 F.2d 927, 934–35 (D.C.Cir.1979); *Oling v. Air Line Pilots Association,* 346 F.2d 270 (7th Cir.), *cert. denied,* 382 U.S. 926, 86 S.Ct. 313, 15 L.Ed.2d 339 (1965). However, "[a]ctions which are not (or not yet) orders but which are nonetheless reviewable may be raised in the district court...." *City of Rochester v. Bond,* 603 F.2d at 935. The Administrator's decision to authorize the scatter plan test is reviewable because of the extensive administrative record on which it was based. Alexandria and Arlington contend that the decision was not a final order.[2]

---

1. Federal Aviation Administration, Environmental Assessment: A Test of Amended Turbojet Departure Paths, May 31, 1983, p. ES–1.

2. We find somewhat disingenuous Alexandria and Arlington's argument that the Administrator's decision to implement the scatter plan tests without issuing an Environmental Impact Statement was not an action taken under the Federal Aviation Act. The Administrator au-thorized implementation of the tests pursuant to his authority under the Federal Aviation Act, specifically 49 U.S.C. § 1348. Although incident to this action was a decision not to prepare an Environmental Impact Statement under the National Environmental Policy Act, that incidental relation with another Act does not lift the Administrator's decision out from under the Federal Aviation Act.

■ Although the FAA refers to the Administrator's decision as an order, the status of that decision must be defined by the circumstances in which it was made.[3] Other circuits have held that an FAA action capable of review on the basis of an administrative record constitutes an order within the meaning of § 1486(a). *Sima Products Corp. v. McLucas,* 612 F.2d 309, 312–13 (7th Cir.), *cert. denied,* 446 U.S. 908, 100 S.Ct. 1384, 64 L.Ed.2d 260 (1980); *Deutsche Lufthansa Aktiengesellschaft v. C.A.B.,* 479 F.2d 912 (D.C.Cir.1973). We agree that the existence of a reviewable administrative record is a determinative factor in defining the FAA decision as an order *vel non,* and we would add only that the agency action must be the final disposition of the matter it addresses. *See California v. Department of Transportation,* 654 F.2d 616, 620 (9th Cir.1981).

■ Alexandria and Arlington argue that the FAA action in this case was not final because "only a temporary test is involved." The duration of the FAA action, however, is not relevant to determining whether the action was final. The dispositive question is whether the agency action was the definitive statement on the subject matter it addressed. *See generally, Abbott Laboratories v. Gardner,* 387 U.S. 136, 149–51, 87 S.Ct. 1507, 1515–16, 18 L.Ed.2d 681 (1967). Here, the matter under consideration was whether the scatter plan test should be implemented without further investigation. The Administrator's August 30, 1983, decision conclusively settled that matter. We conclude, therefore, that the Administrator's decision was final. Noting that it was also based on a reviewable administrative record, we hold that it constituted an order within the meaning of § 1486(a).

■ Alexandria and Arlington additionally contend that the National Environmental Policy Act (NEPA) provides an indepen-

dent basis for district court jurisdiction in this case. *Cf. City of Irving v. Federal Aviation Administration,* 539 F.Supp. 17, 34 (N.D.Tex.1981) (FAA's decision not to issue an EIS was subject to review in the district court when there was no order to review and only claim was under NEPA). However, when review of an agency order is at issue [4] and when Congress has vested exclusive jurisdiction over that review in the Courts of Appeals, NEPA does not provide independent grounds for district court jurisdiction. *City of Rochester v. Bond,* 603 F.2d at 936; *see also United States v. SCRAP,* 412 U.S. 669, 696–97, 93 S.Ct. 2405, 2420–21, 37 L.Ed.2d 254 (1978).

■ Because the Administrator's action implementing the scatter plan test was a final order and because NEPA does not provide an independent basis for jurisdiction in this case, we hold that the district court lacked jurisdiction to issue an injunction.

### III.

■ On petition for review of the FAA order, Alexandria and Arlington argue that the FAA violated the National Environmental Policy Act by failing to issue an EIS before ordering implementation of the scatter plan test. Generally, the decision not to prepare an EIS is left to the informed discretion of the agency. *Providence Road Community Ass'n v. EPA,* 683 F.2d 80, 82 (4th Cir.1982). "Absent a showing of arbitrary action, we must assume that the agencies have exercised this discretion appropriately." *Kleppe v. Sierra Club,* 427 U.S. 390, 412, 96 S.Ct. 2718, 2731, 49 L.Ed.2d 576 (1976).

The FAA's environmental assessment and summary of public comments indicate that careful consideration was given to the possible environmental consequences of the scatter plan test. The FAA noted that the test was of very limited duration, a maximum of

---

3. *See,* e.g., *City of Rochester v. Bond,* 603 F.2d at 935 n. 47 (citing cases).

4. The local governments did not limit their complaints before the district court to claims

that NEPA had been violated. They also alleged that the FAA had violated the Administrative Procedure Act and had acted arbitrarily.

90 days, and that the potential noise levels compared favorably with Occupational Safety and Health Administration standards which allow noise exposure far exceeding noise exposure resulting from the proposed test.[5] After comparing studies on the effects of airport and construction noise, the FAA reasonably concluded that the test "is unlikely to be of sufficient duration to cause lasting health effects." The FAA also carefully assessed the test's impact on energy consumption and air quality. We cannot say that the agency abused its discretion in concluding that preparation of an EIS was unnecessary given the abundant evidence in the record supporting the FAA's conclusion that the 90 day test was not a major federal action significantly affecting the environment. *Cf. City of Irving v. FAA,* 539 F.Supp. at 27 (60 day test of new departure path at airport was not a major action significantly affecting the environment because the test was only temporary and did not involve risk to human health or life).

■ Alexandria and Arlington also contend in their petition for review that the FAA violated the Administrative Procedure Act (APA) by failing to comply with the notice and comment procedures required by 5 U.S.C. §§ 553(b) and (c).[6] Sections 553(b) and (c) apply only to rule making. The APA defines rule as

the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure,

or practice requirements of an agency....

5 U.S.C. § 551(4).

The FAA argues that its order to implement the scatter plan test is not a rule because it merely provides an alternative to air traffic controllers in formulating daily departure procedures from National Airport. Although we believe that the Administrator's order is an agency statement of particular applicability designed to implement agency policy and thus falls within the definition of a rule, we find that under § 553(b)(A) the Administrator's order is exempt from the APA notice and comment requirements.

The rulemaking procedures of § 553 do not apply "to interpretative rules, general statements of policy, or rules of agency organization, procedure or practice." 5 U.S.C. § 553(b)(A). This court has previously discussed the application of § 553(b)(A) and noted that:

To draw the line between substance and procedure in the context of administrative rulemaking, courts have generally held that notice and comment is required if the rule makes a substantive impact on the rights and duties of the person subject to regulation. If the rule does not have such an impact, it is exempt from the notice and comment requirements of the statute. *See Pickus v. United States Board of Parole,* 165 U.S.App.D.C. 284, 289, 507 F.2d 1107, 1112 (1974); *Lewis-Mota v. Secretary of Labor,* 469 F.2d 478, 481 (2d Cir.1972); *Texaco, Inc. v. Federal Power Commission,* 412 F.2d 740, 744 (3d

---

**5.** The 90 day scatter plan test will result in intermittent exposure to noise in the 65 to 80 dBA range. Few, if any, local residents will face new exposure to aircraft noise for much longer than five minutes a day. OSHA standards allow a worker to spend eight hours per day exposed to 90 dBA or two hours per day at 100 dBA. 29 C.F.R. § 1910.95.

**6.** 5 U.S.C. § 553(b) provides that:
General notice of proposed rule making shall be published in the Federal Register, unless persons subject thereto are named and either personally served or otherwise have

actual notice thereof in accordance with law....
Section 553(c) provides that:
After notice required by this section, the agency shall give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation. After consideration of the relevant matter presented, the agency shall incorporate in the rules adopted a concise general statement of their basis and purpose....

Cir.1969); *cf. EEOC v. Raymond Metal Products Co.,* 530 F.2d 590, 593 (4th Cir. 1976).

*Reynolds Metals Co. v. Rumsfeld,* 564 F.2d 663, 669 (4th Cir.1977), *cert. denied,* 435 U.S. 995, 98 S.Ct. 1646, 56 L.Ed.2d 84 (1978). In this case, the rule under consideration only authorized a temporary change in the FAA's regulation of airline flight patterns. As noted earlier, we found it reasonable for the FAA to determine that this short test was not a major action significantly affecting the environment. Because the 90 day test was of short duration and had no lasting effects, we now find that it did not make a substantive impact on the rights and duties of persons subject to regulation. We conclude, therefore, that the order implementing the scatter plan test was exempt under § 553(b)(A) from the APA's notice and comment requirement.[7]

### IV.

For the foregoing reasons, we have denied the petition for review, affirmed the Administrator's order, and remanded No. 83–1944 with instructions to dismiss for want of jurisdiction.

---

**7.** Alexandria and Arlington also contend that the FAA's own regulations require them to conduct formal notice and comment proceedings. 14 C.F.R. § 11.61–11.75 (subpart D— Rules and Procedures for Airspace Assignment and Use). We note, however, that 14 C.F.R. § 11.61(b) provides that "[t]his subpart does not apply to emergency cases and cases in which the procedures ... are found to be impractical, unnecessary, or contrary to the public interest." The FAA concluded that for-

mal notice and comment procedures were unnecessary given the informal public notice and comment procedures employed. Because only a temporary test was the subject of notice and comment, we find the FAA's conclusion to be reasonable.

We do not decide whether formal notice and comment procedures would be required, under either the APA or the FAA regulations, before the FAA made any decision to permanently change flight patterns at National Airport.