**CITY OF SOUTHLAKE, Plaintiff,**

v.

**FEDERAL AVIATION ADMINISTRATION, Department of Transportation, Elizabeth Dole, Federal Aviation Administration, Donald Engen, Dallas–Fort Worth Regional Airport, Orris Dunham, Jr., American Airlines, Inc., and Delta Air Lines, Defendant.**

**No. CA 3–86–2908–R.**

United States District Court, N.D. Texas, Dallas Division.

Dec. 2, 1986.

Douglas G. Caroom and Caroline Scott, Bickerstaff, Heath & Smiley, Austin, Tex., Brett A. Ringle, Robert Stewart, Jones, Day, Reavis & Pogue, Dallas, Tex., for plaintiff.

D.L. Case, Charles Babcock, Mary Emma Karam, Jackson, Walker, Winstead, Cantwell & Miller, Diane M. Kozub, Asst. U.S. Atty., Paul D. Schoonover, Vial, Hamilton, Koch & Knox, Dallas, Tex., Gary Keane, Vonciel Jones Hill, DFW Airport, Tex., for defendant.

## MEMORANDUM OPINION

BUCHMEYER, District Judge.

This suit involves a controversy concerning runway 13R—the new $50 million western northwest/southeast diagonal "crosswind" runway—at the Dallas–Fort Worth International Airport ("DFW").

1. The defendants planned to have runway 13R in operation just before the Thanksgiving holidays in November of 1986 to meet the heavy air travel demands—"the Wednesday before Thanksgiving and the Sunday after Thanksgiving are the most heavily traveled days of the year"—but construction problems delayed its opening until after Thanksgiving.

2. 49 U.S.C. § 1486(a) provides: "Any order, affirmative or negative, issued by the Board or

Before construction started in late 1983, the Federal Aviation Administration ("FAA") specifically found that runway 13R was consistent "with existing national environmental policies and objectives as set forth" in the National Environmental Policies Act, 42 U.S.C. § 4331 ("NEPA"). However, some three days before the runway was to be put into operation,[1] the City of Southlake—a community of approximately 5500 people, located directly to the northwest of runway 13R—sought to enjoin *any use* of this new runway "until such time as defendants have completed [a supplemental] Environmental Impact Statement ... to assess the impact of, and consider alternatives to, unrestricted use" of runway 13R.

■ Under § 1006 of the Federal Aviation Act, 49 U.S.C. § 1486(a),[2] the exclusive jurisdiction of this controversy—which requires judicial review of the FAA decision that no further environmental clearance was necessary prior to the construction and use of runway 13R—lies with the court of appeals. *City of Alexandria v. Helms,* 728 F.2d 643, 645 (4th Cir.1984). Therefore, for the reasons discussed below, this case will be dismissed for want of jurisdiction.

## I. *The Factual Background*

In May of 1974, the FAA approved the Final Environmental Impact Statement ("FEIS") for the development of the DFW Airport. This FEIS covered the environmental impact of "Phase I" of the airport's master plan: two parallel north/south runways and a northwest/southeast diagonal "crosswind" runway (designated as runway *13L*).[3] It also specifically addressed the runways planned for future construction at DFW: two additional north/south runways and a western northwest/south-

Administrator [of the FAA] under this Chapter ... shall be subject to review by the courts of appeals of the United States or the United States Court of Appeals for the District of Columbia."

3. A controversy involving "crosswind" runway 13L was resolved by this Court five years ago in *City of Irving v. Federal Aviation Administration,* 539 F.Supp. 17, 20–21 (N.D.Tex.1981).

east diagonal "crosswind" runway (designated runway *13R* ).[4]

Because of economic reasons—some of which are discussed in this Court's opinion in *City of Irving v. Federal Aviation Administration,* 539 F.Supp. 17, 20–21 (N.D. Tex.1981)—the construction of runway 13R was delayed. However, the need for additional runways to relieve the increasing congestion and delay at DFW became acute (539 F.Supp. at 21). Therefore, in the fall of 1983, DFW gave notice to the cities surrounding the airport—including the plaintiff Southlake—of the proposed construction and intended use of runway 13R.

DFW then prepared a "Technical Assessment of Final Environmental Impact Statement for Proposed Construction of Runway 13R" (the "Technical Assessment"), and, as required, presented it to the FAA for approval. On October 13, 1983, the FAA issued a "Written Reevaluation of Final Environmental Impact Statement, Dallas/Fort Worth Regional Airport—Proposed Construction of Runway 13R." This "Reevaluation" approved the DFW Technical Assessment and the construction of runway 13R by stating:

> "The proposed construction of Runway 13R/13L is consistent with the Airport Master Plan, which has not been altered. The proposed runway involves property previously acquired for this specific use, does not include any off-airport property, and will not divide any established communities or planned development. *The noise analyses showed the impact would not be greater than those projected in the FEIS....* Therefore, the conclusions resulting from the FEIS and confirmed by a thorough review of the Technical Assessment Report, remain applicable, accurate, and valid. After careful and thorough consideration of the facts contained herein, the undersigned finds the proposed Federal Action consistent with existing national environmental policies and objectives as set forth in Section 101(A) of the National Environmental Policies Act of 1969 (NEPA)." (Emphasis added.)

After the FAA advised DFW that the construction of runway 13R was consistent with the FEIS approved in 1974, *and that no additional environmental studies were necessary,* work was begun on runway 13R in late 1983. Its construction cost almost $50 million—some 2½ times the cost of the first "crosswind" runway completed in 1970 during "Phase I" of the airport's plans. (See 539 F.Supp. at 19.)

Almost three years after the FAA's action of October 13, 1983—and just days before the opening of runway 13R—the City of Southlake filed suit to enjoin the use of this new runway. Southlake alleges, in essence, that in May of 1986 the defendants first announced their intent to use runway 13R in an "unrestricted" manner; that this "unrestricted" use will result in a 100% increase in air traffic on runway 13R, and significantly higher noise levels, than were contemplated in the original FEIS or in the 1983 Technical Assessment; and that, therefore, an "adequate" or "supplemental" environmental impact statement must be prepared by DFW and approved by the FAA before runway 13R can be placed in use.

The FAA and the other defendants [5] all deny that the intended usage of runway 13R differs in any significant way from that contemplated in the FEIS and the 1983 Technical Assessment. They also contend that Southlake had known of the intended use of runway 13R for years before construction was begun; that Southlake, over the objections of DFW, actually rezoned property to permit residential development near the end of runway 13R (see 539 F.Supp. at 33); and that the noise levels from the "actual" intended use of runway

---

4. For example, the flight patterns and aircraft noise exposures for all operations intended on runway 13*R,* both arrivals and departures, were covered in detail by the FEIS narrative and the Aircraft South Exposure Map. See pages 106–109, 111 of the May 1974 FEIS.

5. The original defendants were the Federal Aviation Administration, the Department of Transportation, and the DFW Airport. American Airlines, Inc. and Delta Air Lines, Inc., two major carriers at DFW, were permitted to intervene as defendants. See 539 F.Supp. at 24.

13R will be even less than those approved by the FAA in the May 1974 FEIS.

The temporary restraining order sought by Southlake was denied by this Court—in part because each defendant, by motions to dismiss, raised serious questions concerning the jurisdiction of this Court in view of 49 U.S.C. § 1486(a).

II. *The Law*

49 U.S.C. § 1486(a) explicitly provides that orders of the FAA are subject to review *only* "by the courts of appeals ... or the United States Court of Appeals for the District of Columbia." Because of § 1486(a), this Court has no jurisdiction to review an order of the FAA—even where the basic complaint is that the FAA has failed to require the preparation of an environmental impact statement under NEPA. *City of Alexandria v. Helms,* 728 F.2d 643 (4th Cir.1984).

The plaintiffs in the *City of Alexandria,* just like Southlake in this case, challenged the FAA's decision to permit certain actions at an airport—there, the approval of new flight pattern tests; here, the approval of the construction of a new runway—without first requiring an environmental impact statement to assess aircraft noise. Relying upon § 1486(a), the Fourth Circuit held that the district court was without jurisdiction:

> "[The plaintiffs] Alexandria and Arlington contend that the National Environmental Policy Act (NEPA) provides an independent basis for district court jurisdiction in this case. Cf. *City of Irving v. Federal Aviation Administration,* 539 F.Supp. 17, 34 (N.D.Tex.1981) (FAA's decision not to issue an EIS was subject to review in the district court when there was no order to review and only claim was under NEPA). However, when review of an agency order is at issue and when Congress has vested ex-

clusive jurisdiction over that review in the Court of Appeals, NEPA does not provide independent grounds for district court jurisdiction. *City of Rochester v. Bond,* 603 F.2d at 936; see also *United States v. SCRAP,* 412 U.S. 669, 696–97, 93 S.Ct. 2405, 2420–21, 37 L.Ed.2d 254 (1978).

> "Because the Administrator's action implementing the scatter plan test was a final order and because NEPA does not provide an independent basis for jurisdiction in this case, we hold that the district court lacked jurisdiction to issue an injunction." [6]

It is true, as indicated by this quotation from *City of Alexandria,* that this Court—in the first case involving one of the crosswind runways at DFW: *City of Irving v. Federal Aviation Administration,* 539 F.Supp. 17 (N.D.Tex.1981)—found that a district court does have jurisdiction to review the FAA's failure to require the filing of an environmental impact statement. However, the *Irving* decision was issued before the Fourth Circuit opinion in *Alexandria.* Moreover, the two principal jurisdictional arguments made to this Court in *Irving* concerned "primary jurisdiction" and the alleged "failure to exhaust administrative remedies." (See 539 F.Supp. at 34.) In fact, the only authority cited in support of the claim that courts of appeal had exclusive jurisdiction in *Irving* was *City of Rochester v. Bond,* 603 F.2d 927 (D.C.Cir.1979)—a case which was, *and is,* clearly distinguishable from *Irving.*

■ However, while the *Rochester* case is distinguishable, the decision in *City of Alexandria* is not; it involved a controversy identical to the one presented in *City of Irving.* And, upon further consideration of this issue, this Court must agree with the Fourth Circuit ... must reject, if not overrule, the last paragraph of its own prior

---

**6.** The Fourth Circuit also stated: "We find somewhat disingenuous [the plaintiffs'] argument that the Administrator's decision to implement the scatter plan tests without issuing an Environmental Impact Statement was not an action taken under the Federal Aviation Act. The Administrator authorized implementation of the tests pursuant to his authority under the Federal Aviation Act, specifically 49 US.C. § 1348. Although incident to this action was a decision not to prepare an Environmental Impact Statement under the National Environmental Policy Act, that incidental relation with another Act does not lift the Administrator's decision out from under the Federal Aviation Act." (728 F.2d at 645, fn. 2).

decision in *Irving* [7] ... and must hold that a NEPA claim does not provide an independent basis for jurisdiction in the district court for challenges to FAA actions involving the approval of, or the failure to require, environmental impact statements.[8]

This controversy over runway 13R does involve a final "order" of the FAA—specifically, its October 13, 1983 approval of the construction of a long-planned $50 million runway pursuant to the original 1974 FEIS, without the preparation of a new or supplemental environmental impact statement. See *Suburban O'Hare Comm'n v. Dole,* 787 F.2d 186, 193 (7th Cir.1986); *Sima Products Corp. v. McLucas,* 612 F.2d 309, 312–14 (7th Cir.), *cert. denied,* 446 U.S. 908, 100 S.Ct. 1834, 64 L.Ed.2d 260 (1980). Moreover, contrary to the Southlake argument, this Court *would* conclude that there is a "reviewable administrative record" in this case—but for the obvious fact that this determination must be made by the court of appeals, not by the district court, because of the jurisdictional limitations of § 1486(a). *City of Alexandria v. Helms,* 728 F.2d at 646; *City of Irving v. Federal Aviation Administration,* 539 F.Supp. at 26, 30.[9]

Accordingly, because this action involves a final order of the FAA—the decision that no further environmental clearance was necessary for the construction and use of runway 13R at the DFW Airport—and because this controversy must be heard by the court of appeals under 49 U.S.C. § 1486(a), the case is dismissed for want of subject matter jurisdiction.

---

**7.** With all due humility, this Court must also agree with the Fourth Circuit when, in *City of Alexandria,* it cited *with approval* the rest of this Court's decision in *Irving* in support of the conclusion that "the 90 day test [of new flight patterns] was not a major federal action significantly affecting the environment." 728 F.2d at 647.

**8.** This conclusion is also supported by *Suburban O'Hare Comm'n v. Dole,* 787 F.2d 186 (7th Cir. 1986), in which the court stated:

"If there is any ambiguity as to whether jurisdiction lies with a district court or with a court of appeals, we [the Court of Apeals] must resolve that ambiguity in favor of review by a court of appeals. If a decision of an administrative agency is based, in substantial part, on a statutory provision providing for exclusive review by a court of appeals, then the entire proceeding must be reviewed by a court of appeals." (787 F.2d at 192–93.)

See also *City of Aurora v. Hunt,* 749 F.2d 1457 (10th Cir.1984).

**9.** As discussed in *City of Irving,* 539 F.Supp. at 26, if the FAA's administrative record is not adequate for review, the court may (i) enjoin the project in question until the agency has completed such a record, or (ii) hear evidence on the environmental impact of the project for the purpose of supplementing the administrative record. *Save Our Ten Acres v. Kreger,* 472 F.2d 463, 465 (5th Cir.1973); *Hiram Clarke Civic Club, Inc. v. Lynn,* 476 F.2d 421, 425 (5th Cir. 1973).