**TOWNSHIP OF DELHI, a Political Subdivision of the State of Ohio, and Oak Hills Local School District, a Political Subdivision of the State of Ohio, Plaintiffs,**

**v.**

**T. Allan McARTOR, In His Official Capacity as Administrator of the Federal Aviation Administration, John M. Dempsey, In His Official Capacity as Manager of the Memphis Airports District Office of the Federal Aviation Administration, and Kenton County Airport Board, a Political Subdivision of the Commonwealth of Kentucky, Defendants.**

Civ. No. C–1–88–841.

United States District Court, S.D. Ohio, W.D.

Oct. 5, 1988.

Christopher Bechhold, Cincinnati, Ohio, Steven Pflaum, Chicago, Ill., for plaintiffs.

Wilbert Zeigler, Covington, Ky., David Shuey, Washington, D.C., Michael Gatzke, Carlsbad, Cal., for defendants.

## ORDER

CARL B. RUBIN, Chief Judge.

This matter is before the Court following oral argument on October 3, 1988 and the submission of evidence. On October 1, 1988 the Court met with counsel on the premises of the Greater Cincinnati International Airport, received instruction as to airport operation at the control tower and was flown with counsel by helicopter over the location of a proposed runway and that portion of Delhi Township affected by its use.

Plaintiffs seek to enjoin Defendants from signing a contract to level and grade the ground upon which the runway will be built. Pursuant to Rule 52, Fed.R.Civ.P., the Court does set forth herewith its Findings of Fact, Opinion and Conclusions of Law.

## I. FINDINGS OF FACT

1. The Greater Cincinnati International Airport (Airport) is located in Boone County, Kentucky, south of City of Cincinnati. It has occupied that location for over forty years. The airport currently consists of three runways, a north/south runway identified as 18/36 [1] and two east/west run-

---

1. Runways are identified by their compass heading. A runway numbered 18/36 indicates

ways identified as 27L/9R and 27R/9L. The airport is served by twelve carriers and acts as a hub for Delta Airlines.

2. In February, 1988, the Kenton County Airport Board ("Airport Board") which operates the Airport requested permission to construct a new runway approximately 10,-000 feet in length to be known as 18L/36R. Upon such construction existing runway 18/36 will be identified as 18R/36L. Prior to such determination the Airport Board had commissioned a study known as "Environmental Assessment For Construction of Runway 18L/37R" (Plaintiffs' Ex. 15)[2].

3. Approval by the Federal Aviation Administration (FAA) was subsequently received together with a grant of $36,620,088 to assist in the construction of such runway. The Airport Board has advertised for bids and is prepared to award a contract for the leveling and grading of the runway site at this time. A Temporary Restraining Order issued by this Court on September 26, 1988 prevented the awarding of such contract until after October 3, 1988. The runway in question will be constructed in stages and it is currently contemplated that it will be available for use in November of 1990.

4. Plaintiffs Delhi Township and the Oak Hills Local School District are each political subdivisions of the State of Ohio and are located to the north of the airport. Airplanes taking off from Runway 36 and landing on Runway 18 fly over portions of such subdivisions. Airplanes landing on proposed runway 18L would likewise descend over Delhi Township, but in an area

that is currently more populated. Take-offs from proposed runway 36R would likewise ascend over the Delhi Township area. The proposed runway would terminate on the north several miles south of the Ohio River and the populated area of Delhi Township[3].

5. To mitigate noise over Delhi Township the Defendants propose that only Stage III aircraft will use the proposed runway and that all take-offs on existing runway 36 would turn left at the Ohio River and follow its course westwardly while gaining altitude. As a result of these limitations no portion of Delhi Township will be subjected to noise levels above 65 LDN[4].

6. Jet aircraft currently in use are referred to as Stage II airplanes. They include planes manufactured by McDonnell Douglas and known as DC8, DC9, DC10; planes manufactured by Boeing Aircraft and known as 707, 727, and 737; and a plane manufactured by Lockheed known as L1011. These planes are in the process of replacement by newer and quieter airplanes known as Stage III aircraft. They include, by way of example, the MD80, constructed by McDonnell Douglas and the 757 and 767, constructed by Boeing.

## II. OPINION

■■■ There is a threshold issue of whether this Court possesses the requisite subject matter jurisdiction to entertain this matter. The Plaintiff's complaint purports to state twenty-seven separate claims for injunctive relief against the Defendants under the National Environmental Policy Act

that southbound traffic follows a compass heading of 180° (due South) and northbound traffic a compass heading of 360° (due North).

2. The study as shown by Plaintiffs' Exhibit 15 consists of four volumes measuring 8″ in height.

3. The political boundaries of Hamilton County are such that a portion of the City of Cincinnati occupies the land adjacent to the northerly bank of the Ohio River and within the flight pattern of proposed runway 36R. Beyond the flood plain of the Ohio River is high ground which constitutes the southern border of Delhi Township. Plaintiffs' counsel estimated that the distance from the end of proposed runway 36R to the border of Delhi Township is two and one-half miles. Defendants' Exhibit H, which is a

large map with two overlays, when scaled indicates a distance in excess of 14,000 feet, which approximates three miles (5,280 × 3 = 15,840).

4. The 65 Ldn contour delineates the area within which aircraft noise exceeds 65 decibels, as measured on the day-Night Average Sound Level scale. That scale reflects the number, duration, and intensity of noise "events." The Ldn scale weighs night-time noise ten times as heavily as the same absolute amount of day-time noise, reflecting the fact that people perceive noise as more intrusive during the night. *Suburban O'Hare Com'n. v. Dole,* 787 F.2d 186, 189 Fn. 6 (7th Cir.1986).

of 1969 ("NEPA") (42 U.S.C. § 4321 *et seq.*) and two such claims under the National Historic Preservation Act ("NHPA") (16 U.S.C. § 470 *et seq.*) with respect to the proposed runway.

The NEPA requires that if an agency of the United States government undertakes a project that will affect the environment it must determine if its proposed action may "significantly affect" the environment, 42 U.S.C. § 4321. The agency must initially prepare an environment assessment of the action known as an "EA." Based upon the determinations of the EA, the agency must issue either; (1) an Environmental Impact Statement ("EIS"), which is a detailed statement on the environmental impact of the proposed action and how it significantly affects the environment, or (2) a Finding of No Significant Impact ("FONSI"), which determines that its proposed action will not significantly affect the environment. *Crounse Corp. v. ICC,* 781 F.2d 1176 (6th Cir.1986), 42 U.S.C. § 4332(2)(c), 40 C.F.R. § 1501.4b–c.

In preparation of the proposed runway the Defendant FAA conducted an Environmental Assessment and prepared it under the NEPA. This EA was then circulated and subsequently a Final Environmental Assessment was issued. Thereafter, a Finding of No Significant Impact was determined. (Defts.Ex. A). The FONSI states on page three:

> When the FAA received the request for federal grant funding, a decision was made to prepare an environmental assessment of sufficient detail such that it could be processed as either an Environmental Impact Statement (EIS) or a Finding of No Significant Impact (FONSI) depending upon the significance of the impact identified during the study.

Defendants assert that based upon this FONSI a final order was issued by the agency which is appealable only to United States Court of Appeals for the Sixth Circuit pursuant to 49 U.S.C.App. § 1486(a), (d). Accordingly Defendants assert that this Court lacks the requisite subject matter jurisdiction to hear this matter in controversy.

49 U.S.C.App. § 1486(a) states in pertinent part:

> (A) *Any* order, affirmative or negative, issued by the Board or Secretary of Transportation under this chapter; ... shall, be subject to review by the Courts of Appeals of the United States....

This statute further states in subsection (d):

> Upon transmittal of the petition to the Board or Secretary of Transportation, the Court shall have *exclusive* jurisdiction to affirm, modify, or set aside this order complained of.... (emphasis added)

The United States Court of Appeals for the Sixth Circuit has not yet considered this question, but at least four other courts have held that exclusive appellate jurisdiction resides in such Courts of Appeal. *C.A. R.E. v. Federal Aviation Administration,* 844 F.2d 1569 (11th Cir.1988); *Suburban O'Hare Com'n v. Dole,* 787 F.2d 186 (7th Cir.1986), *affirming* 603 F.Supp. 1013 (N.D.Ill.1985); *City of Alexandria v. Helms,* 728 F.2d 643 (4th Cir.1984); *State of New York v. FAA,* 712 F.2d 806 (2d Cir.1983).

Initially, and in opposition, Plaintiffs' contend that the FONSI is not a, final appealable order because the Defendant FAA did not take the requisite "hard look" at the environmental consequences of its decisions under *Crounse, supra.* However, the FAA not only issued an EA, but also a subsequent final EA. Nevertheless, for purposes of review under 49 U.S.C.App. § 1486 the term "order" should receive a liberal construction, *State of New York v. FAA, supra* at 808; *Sima Products Corp. v. McLucas,* 612 F.2d 309, 312 (7th Cir. 1980), *cert. denied* 446 U.S. 908, 100 S.Ct. 1834, 64 L.Ed.2d 260 (1980). Furthermore, the existence of a reviewable administrative record is the determinative element in defining an FAA decision as an "order" for purposes of § 1486, *City of Alexandria,* 728 F.2d at 646; *Suburban O'Hare Com'n.,* 787 F.2d at 193.

■ This Court further notes that in *Crounse* it was held that an agency deci-

sion, based upon an EA that no EIS was required, can be overturned only if it is arbitrary, capricious, or an abuse of discretion, *supra* at 1193; *See also Sierra Club v. Peterson*, 717 F.2d 1409, 1413 (D.C.Cir. 1983). This Court may not substitute its judgment of the environmental impact for that judgment of the agency. *id.* Furthermore a final order is one which imposes an obligation, denies a right, or fixes some type of legal relationship. *Chicago & Southern Airlines, Inc. v. Waterman Steamship Corp.*, 333 U.S. 103, 112–113, 68 S.Ct. 431, 436–37, 92 L.Ed. 568 (1948). Accordingly, this Court finds that Plaintiffs' argument is not well taken.

Plaintiffs further argue that this action does not arise under Chapter 20 of the Federal Aviation Act. Conversely, Defendants submit that by its terms 49 U.S.C.App. § 1486 applies to decisions made by the FAA under Chapter 20 of Title 49 of the United States Code (49 U.S.C.App. §§ 1301–1557) (Chapter 20). Chapter 20 is the Federal Aviation Act of 1958 as amended by subsequent and later acts of Congress. Defendants further submit that the FAA does have statutory responsibilities which appear at places other than the Chapter 20 of Title 49. While the exclusive jurisdiction provisions of 49 U.S.C.App. § 1486 do not apply directly to actions of the FAA or the Administrator taken or made under statutory authority other than Chapter 20, the Courts of Appeal have held that *any* portion of a challenged decision of the FAA made at least in part under Chapter 20 renders exclusive jurisdiction to the Court of Appeals under 49 U.S.C.App. § 1486. *City of Alexandria*, 728 F.2d at 646; *Suburban O'Hare Com'n.*, 787 F.2d at 193.

The absence of instruction on this subject in this Circuit presents this court with a dilemma. An erroneous finding of no jurisdiction would merely delay this matter and require a subsequent disposition of the motion for preliminary injunction, but a finding of jurisdiction, even if erroneous, does not delay this matter since the merits of a preliminary injunction could be considered by the Court of Appeals at the same time.

In consideration of the above authorities, this Court has substantial doubts regarding its subject matter jurisdiction. It will, however, determine the motion for preliminary injunction on the merits for whatever assistance that decision might provide.

It is a reality of modern urban society that there will be unpleasant side effects. Garbage and industrial wastes will be generated and must be disposed of somewhere. Cities require vast quantities of food and industrial goods and there must be super highways with noise and glare and emission of unpleasant fumes somewhere. Interstate and intercontinental transportation require jet aircraft that create noise and such aircraft must land and take off somewhere. No airport can be large enough completely to encompass all of the activities of aircraft that cause noise.

■ This case does not involve a judicial banning of a proposed runway. Plaintiffs' counsel have conceded that Plaintiffs cannot ultimately prevent the new runway from being built. Plaintiffs insist, however, that for lack of an appropriate Environmental Impact Statement, the construction should be delayed until such statement is provided. Before the Court at this time is only a motion to enjoin a contract to grade and level the runway site and nothing more. Approximately two years will elapse between this activity and the completion and use of such runway. The narrow issue before the Court therefore is not the question of use, but rather of a preliminary contract that will prepare the site for its ultimate use. No conceivable harm by way of noise can come to Plaintiffs from such construction. It is in that narrow context that the Court now turns to a consideration of the issues involved.

The standard of inquiry for a preliminary injunction in this Circuit has been clearly stated in *Mason County Medical Association v. Knebel*, 563 F.2d 256, 264 (6th Cir. 1977). The four standards which a trial court should be considered are:

1. Whether the plaintiff has shown a strong or substantial likelihood or probability of success on the merits;

2. Whether the plaintiff has shown irreparable injury;

3. Whether the issuance of a preliminary injunction would cause substantial harm to others; and

4. Whether the public interest would be served by issuing a preliminary injunction.

■] If success on the merits in this matter be defined as preventing permanently the construction of this runway, Plaintiffs have little if any likelihood of success and indeed Plaintiffs' counsel have so conceded. It is difficult to see a success on the merits. Delaying construction of the runway for an unknown period of time does not qualify as success. The FAA has authorized the building of the runway. The United States and the Airport Board have committed sufficient funds for its completion. It is difficult to see the concept of success in mere delay since the Airport Board has already considered alternatives such as the construction of a third east/west runway, or not constructing any runway, or constructing a runway without mitigating restrictions. The sole claim of the Plaintiffs is the lack of an EIS.

Success cannot be an effort to review the action by the FAA *de novo*. The law is quite clear that the appropriate standard of review is the "substantial evidence" test. *Suburban O'Hare Com'n. v. Dole, supra* at 194; *State of South Dakota v. CAB*, 740 F.2d 619, 621 (8th Cir.1984); *Aircraft Owners & Pilots Assn v. FAA*, 600 F.2d 965 (D.C.Cir.1979). That test has been met.

■ It is not clear that Plaintiffs have shown irreparable injury. Arguably there will be more flights over Delhi Township if this runway is constructed, but that is only an argument. It has not been demonstrated that the construction of the runway will increase the number of northbound take-offs or southbound landings. Other factors beyond the control of either side will dictate the future economic use of this airport. The only fact that has been established is that the current burden of northbound take-offs and southbound landings will be divided between two runways, rather than confined to one. The noise thereof

will be shared by a larger geographical area.

■] In terms of the ultimate resolution of this problem a preliminary injunction would cause substantial harm to the Airport Board by an unnecessary delay to those travelers who are confined to the total burden of take-offs and landings from runway 18R/36L and to the public which may well be required to pay additional money caused merely by delay. The Court will take judicial notice that over the past twenty years there has been a steady and at times precipitous increase in the cost of public improvements and there is little prospect for a change.

■ [4] The considerations of public interest have been subsumed in the foregoing discussion. A modern and efficient Greater Cincinnati International Airport is important not only to the Cincinnati community, but also to the national airways system. An airport which is overcrowded, obsolete or inefficient is not only a disservice to the public, but may constitute a safety hazard. It is in the public interest that this airport be maintained in a fashion consistent with safety and convenience to the community. It is the decision of the FAA that runway 18L/36R should be constructed. In the absence of any showing that this decision was not supported by substantial evidence or was arbitrary and capricious, the Court believes that its expertise must be respected.

Accordingly, for the foregoing reasons, the Temporary Restraining Order heretofore entered is hereby dissolved and the Motion for Preliminary Injunction is hereby DENIED.

### III.  CONCLUSIONS OF LAW

A.  A preliminary injunction may be granted only upon a showing of a likelihood of success on the merits, irreparable injury, a lack of substantial harm by issuance and the serving of the public interest. *Mason County Medical Association v. Knebel*, 563 F.2d 256, 264 (6th Cir.1977).

B.  Where Plaintiffs have shown no likelihood of preventing the ultimate construc-

tion of a proposed airport runway, no irreparable injury and no advantage to the public interest, the tests of *Mason County Medical Association v. Knebel, supra,* have not been met.

C. Only a delay in construction of a proposed runway does not constitute success on the merits.

In accordance with the foregoing Plaintiff's Motion for A Preliminary Injunction preventing Defendants from entering into a contract to grade and level a site for an airport runway should be and is hereby DENIED at Plaintiffs' costs.

IT IS SO ORDERED.