**SAN DIEGO AIR SPORTS CENTER, INC., a California Corporation, Petitioner,**

v.

**FEDERAL AVIATION ADMINISTRATION, Respondent.**

**No. 88–7326.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 4, 1989.

Decided Oct. 18, 1989.

---

Charles B. Harris, San Diego, Cal., for petitioner.

Michael E. Robinson, Civil Div., Dept. of Justice, Washington, D.C., for respondent.

Before POOLE, BEEZER and TROTT, Circuit Judges.

BEEZER, Circuit Judge:

San Diego Air Sports Center, Inc. ("SDAS") challenges a letter from the FAA that says parachuting will no longer be allowed in the San Diego Terminal Control Area. An agency determination is reversed if it is "arbitrary, capricious, an abuse of discretion or not otherwise in accordance with law." 5 U.S.C. § 706(2)(A); *see Garrett v. Lehman,* 751 F.2d 997, 999 n. 1 (9th Cir.1985). Because the FAA failed to comply with the law in issuing the letter, we reverse.

I

SDAS operates a sports parachuting business in Otay Mesa, California. SDAS offers training to beginning parachutists and facilitates recreational jumping for experienced parachutists. SDAS indicates that the majority of jumps occur at altitudes in excess of 5800 feet.

The jump zone used by SDAS overlaps the San Diego Traffic Control Area ("TCA").[1] Although the aircraft carrying the parachutists normally operate outside the TCA, the parachutists themselves are monitored and controlled. *See* 14 C.F.R. § 71.12 (1988). The San Diego TCA serves several military and civilian airfields located in and near San Diego.

---

1. A Traffic Control Area is an area of congested airspace around an airport in which all aircraft are subject to special operating rules and equipment requirements. Air traffic in a TCA is

dropped through it.[2] Thus, each jump must be approved by air traffic controllers.

In July of 1987, an air traffic controller in San Diego filed an Unsatisfactory Condition Report complaining of the strain that parachuting was putting on the controllers and raising safety concerns. The report led to a staff study of parachute jumping within the San Diego TCA. In October of 1987, representatives of the San Diego Terminal Radar Approach Control ("TRACON")[3] facility met with SDAS operators. In December of 1987, the San Diego TRACON sent a draft letter of agreement to SDAS outlining agreed upon procedures and coordination requirements. Nonetheless, the San Diego TRACON conducted another study between January 14, 1988 and February 11, 1988, and about two months after the draft letter was sent, the San Diego TRACON withdrew it.

SDAS states that the Air Traffic Manager of the San Diego TRACON assured SDAS that it would be invited to attend all meetings on parachuting in the San Diego TCA. However, SDAS was not informed of or invited to any meetings.

In March of 1988 the FAA sent a letter to SDAS informing SDAS that "[e]ffective immediately parachute jumping within or into the San Diego TCA in the Otay Reservoir Jump Zone will not be authorized." The FAA stipulates that this letter is final and appealable.

## II

■ Although the FAA stipulates that the letter is final and appealable, we must determine for ourselves whether jurisdiction is proper. *In re Pizza of Hawaii, Inc.*, 761 F.2d 1374, 1377 (9th Cir.1985). We have jurisdiction over "[a]ny order, affirmative or negative, issued by the [Federal Aeronautics] Board or Secretary of Transportation under [the Federal Aviation Act]." 49 U.S.C.App. § 1486(a).

The use of the word "order" in section 1486(a) is somewhat problematic. When reviewing administrative action, we are required to differentiate between "orders" and "rules". *Compare* 5 U.S.C. § 553 *with* 5 U.S.C. § 554. Those who deal closely with administrative law have developed labels that include "order," "rules," "hybrid rules," "policies," and "actions." *See* K. Warren, Administrative Law in the American Political System 235, 270, 310 (1982); J. O'Reilly, Administrative Rulemaking §§ 3.08, 5.02 (1983). Thus, it would be quite easy to become mired in tautological debate when considering the extent of jurisdiction under section 1486(a).

Several other circuits have had to interpret section 1486(a). The Fourth, Seventh, Eighth, and District of Columbia Circuits have held that section 1486(a) is not to be given a narrow, technical reading; instead, it is to be interpreted expansively. *See City of Alexandria v. Helms*, 728 F.2d 643, 646 (4th Cir.1984); *Sima Products Corp. v. McLucas*, 612 F.2d 309, 313 (7th Cir.), *cert. denied*, 446 U.S. 908, 100 S.Ct. 1834, 64 L.Ed.2d 260 (1980); *Northwest Airlines, Inc. v. Goldschmidt*, 645 F.2d 1309, 1313–14 (8th Cir.1981); *City of Rochester v. Bond*, 603 F.2d 927, 932–35 (D.C.Cir.1979). We agree with these courts that "the purposes of special review statutes—coherence and economy—are best served if courts of appeal exercise their exclusive jurisdiction over *final agency actions.*" *Sima Products*, 612 F.2d at 313 (emphasis added); *see Kolek v. Engen*, 869 F.2d 1281, 1284 (9th Cir.1989) (courts of appeals have exclusive jurisdiction under section 1486(a)); *see generally* Currie & Goodman, *Judicial Review of Federal Administrative Action: Quest for the Optimum Forum*, 75 Column.L. Rev. 1, 16–19 (1975) (advantage of appellate court jurisdiction).

In determining whether the FAA's action falls within the scope of section 1486(a), these circuits have focused on the finality of the action and the adequacy of the

---

**2.** The floor of the San Diego TCA is 5,800 feet. *See* 53 Fed.Reg. 3714–19 (1988). SDAS claims it could not profitably operate below the TCA.

**3.** A TRACON has the responsibility for providing air traffic control service within a designated airspace and has administrative aspects as well.

record to support judicial review. *See, e.g., Northwest Airlines,* 645 F.2d at 1314; *cf. Air California v. Department of Transportation,* 654 F.2d 616, 619–20 (9th Cir. 1981) (FAA letter not reviewable because not final). We adopt and apply this analysis.

In *Southern California Aerial Advertisers' Ass'n v. Federal Aviation Administration,* 881 F.2d 672 (9th Cir.1989), we faced the question of whether a letter very similar to the one involved in this appeal constituted an order as described by section 1486(a). We determined that such a letter "possesses the requisite finality" to give us jurisdiction under section 1486(a). Id. at 676. Significantly, we also determined that the record in *Aerial Advertisers,* which consisted of little more than the appealed letter, limited review to procedural questions. *Id.* at 676–77. Nonetheless, the record was adequate for review of those questions. *Id.* at 677–78; *cf. Nevada Airlines, Inc. v. Bond,* 622 F.2d 1017, 1020 (9th Cir.1980) ("Without an administrative record or agency hearing ... we limit our review to determine whether the [FAA's action] was arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law.").

The record in this appeal also consists of little more than the letter. The limits of the record limit our jurisdiction; we too confine ourselves to SDAS's procedural arguments. For those jurisdictional questions, however, we hold that section 1486(a) does provide us with jurisdiction over the FAA's final determination. In this case, as discussed below, that final determination constitutes a rule.

### III

■ The Federal Aviation Act requires that rules affecting the use of navigable airspace be issued in accordance with the Administrative Procedure Act ("APA"). 49 U.S.C.App. § 1348(d). The "principal purpose" of section 553 of the APA is "to provide that the legislative functions of administrative agencies shall so far as possible be exercised only upon public partic-

ipation." S.Doc. No. 248, 79th Cong., 2d Sess. 257 (1946); *see* 5 U.S.C. § 553. Section 553 of the APA requires agencies to adhere to three steps when promulgating rules: notice of the proposed rule, opportunity to comment, and an explanation of the rule ultimately adopted. 5 U.S.C. § 553(b), (c). These three requirements have been referred to as "the statutory *minima*" imposed by Congress. *Vermont Yankee Nuclear Power Corp. v. NRDC,* 435 U.S. 519, 548, 98 S.Ct. 1197, 1214, 55 L.Ed.2d 460 (1978).

■ Not every decision made by administrative agencies requires citizen participation. The APA lists four instances when the statutory *minima* do not apply: when the agency is promulgating (1) interpretive rules, (2) general statements of policy, or (3) rules of agency organization, procedure, or practice, or (4) when the requirement of notice and participation are impractical or contrary to public interest. 5 U.S.C. § 553(b)(A), (B).

Congress was concerned that the exceptions to section 553, though necessary, might be used too broadly. The Senate noted that the courts have a "duty ... to prevent avoidance of the requirements of the [Act] by any manner or form of indirection." S.Doc. No. 248, 79th Cong., 2d Sess. 217 (1946); *see American Bus Ass'n v. United States,* 627 F.2d 525, 528 (D.C.Cir. 1980) ("the legislative history of the section is scattered with warnings that various of the exceptions are not to be used to escape the requirements of section 553"). We have stated that "[t]he exceptions to section 553 will be 'narrowly construed and only reluctantly countenanced.'" *Alcaraz v. Block,* 746 F.2d 593, 612 (9th Cir.1984) (citations omitted).

The Supreme Court has turned to the *Attorney General's Manual on the Administrative Procedure Act* for working definitions of the exceptions. *Chrysler Corp. v. Brown,* 441 U.S. 281, 302 n. 31, 99 S.Ct. 1705, 1717 n. 31, 60 L.Ed.2d 208 (1979); *see Mada–Luna v. Fitzpatrick,* 813 F.2d 1006, 1012–13 (9th Cir.1987). The *Manual* defines the first two exceptions as explanations of what the agency believes

substantive rules mean.[4] *See Chamber of Commerce of United States v. OSHA,* 636 F.2d 464 (D.C.Cir.1980).

The FAA letter does not come within either of the first two exceptions. The letter creates an immediate, substantive rule, *i.e.,* that no parachuting will be allowed in the San Diego TCA. The letter is *not* comparable to the directive held in *Mada–Luna* to be a general statement of policy. That directive "merely provide[d] *guidance* to agency officials in exercising their discretionary powers while preserving their flexibility and their opportunity to make 'individualized determination[s].' " 813 F.2d at 1013 (citation omitted). Nor is the FAA letter comparable to the regulations held to be interpretative rules in *Alcaraz.* Those regulations "simply explained something the statute already required." 746 F.2d at 613.

The FAA argues that parachuting created an emergency to which it responded in the letter at issue. It is further argued that a response to an immediate emergency is covered by the fourth exception. This argument is not persuasive.[5] The only accident known to the FAA occurred two years before it issued its letter. Furthermore, the FAA itself claims to have extensively studied the situation before issuing the letter. The FAA does not explain why public participation as required by the APA could not be included in its study.

Finally, the FAA argues that the letter is not a rule at all; rather, the FAA characterizes the letter as an order to which the requirements set forth in section 553 of the APA does not apply. We find this argument somewhat mystifying, as there are equally stringent participation requirements for orders. *See* 5 U.S.C. § 554. Furthermore, the FAA is wrong: the letter is a rule.

A time-honored principle of administrative law is that the label an agency puts on its actions "is not necessarily conclusive." *Columbia Broadcasting System, Inc. v. United States,* 316 U.S. 407, 416, 62 S.Ct. 1194, 1200, 86 L.Ed. 1563 (1942). Equally true, however, is the fact that agencies can issue rules through adjudication (the process by which orders are normally issued) and orders through rulemaking. *See SEC v. Chenery Corp.,* 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947). This has often lead reviewing courts to examine the process by which an agency result is achieved rather than at the result itself. *See* K. Davis, *Treatise on Administrative Law* § 10.5 (1979).

In this case no record was kept of the "process" that resulted in the FAA letter; we can only scrutinize the letter itself. The letter clearly promulgates a rule. It states that *all* parachuting by any party will be prohibited in the San Diego TCA from the time it is issued. This comports with this court's statement that "[s]ubstantive rules are those which effect a change in existing law or policy." *Powderly v. Schweiker,* 704 F.2d 1092, 1098 (9th Cir. 1983); *see* 5 U.S.C. § 551(4); *cf. United States v. Florida East Coast Ry. Co.,* 410 U.S. 224, 245, 93 S.Ct. 810, 821, 35 L.Ed.2d 223 (1973) (recognizing a "distinction in administrative law between proceedings for the purpose of promulgating policy-type rules or standards, on the one hand, and proceedings designed to adjudicate disputed facts in particular cases on the other"). *See* 5 U.S.C. § 551(4).

The FAA is correct that "order" is broadly defined. However, it ignores the fact that the definition is residual, generally catching those results that are not defined as rules. 5 U.S.C. § 551(6); *see* G. Edler & J. Nelson, *Federal Regulatory Process:*

---

**4.** The *Manual* defines interpretive rules as "rules or statements issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers"; general statements of policy are defined as "statements issued by an agency to advise the public prospectively of the manner in which the agency proposes to exercise a discretionary power." Most courts define policy statements as "merely an announcement to the public of

the policy which the agency hopes to implement in future proceedings." *See, e.g., Pacific Gas & Electric Co. v. FPC,* 506 F.2d 33, 38 (D.C.Cir. 1974).

**5.** The authorities referred to by the FAA in its brief merely support the existence of the emergency exception.

*Agency Practices and Procedures* 15 (1986). The FAA letter falls within the specific definition of "rule"; there is no need to go beyond that.

## IV

The Federal Aviation Act requires that rules affecting the use of navigable airspace be issued in accordance with the APA. 49 U.S.C.App. § 1348(d). In issuing this substantive rule, the FAA failed to do so. A substantive rule is invalid if the issuing agency fails to comply with the APA. *Linoz v. Heckler,* 800 F.2d 871, 878 (9th Cir.1986). Therefore, the petition for review is GRANTED.