**Michelle D. GREEN, et al., Plaintiffs,**

v.

**TRANSPORTATION SECURITY ADMINISTRATION, et al., Defendants.**

**No. C04–763Z.**

United States District Court, W.D. Washington, At Seattle.

Jan. 7, 2005.

Aaron H. Caplan, American Civil Liberties Union of Washington, Seattle, WA, Catherine Yonsoo Kim, American Civil Liberties Union (N.Y.), Immigrants' Rights Project, New York City, Michael E. Kipling, Summit Law Group, Seattle, WA, Reginald T. Shuford, American Civil Liberties Union (N.Y.), Immigrants' Rights Project, New York City, for Michelle D. Green, John F. Shaw, David C. Fathi, Sarosh Syed, Mohamed Ibrahim, David Nelson, Alexander Hay on behalf of themselves and all others similarly situated, Plaintiffs.

Brian C. Kipnis, U.S. Attorney's Office (SEA), Seattle, WA, Diane Kelleher, U.S. Department of Justice, Joseph William Lo-Bue, U.S. Department of Justice, Civil Division Federal Programs, Washington, DC, for Transportation Security Administration, David M. Stone, Department of Homeland Security, Tom Ridge, Defendants.

## ORDER

ZILLY, District Judge.

## I. INTRODUCTION

This matter comes before the Court on Defendants' motion to dismiss for lack of subject matter jurisdiction and Defendants' motion to dismiss for failure to state a claim upon which relief can be granted, docket no. 15. The Court heard oral argument on these motions on November 4, 2004, and took the matter under advisement. The Court now, being fully advised, enters the following Order.

## II. BACKGROUND

The Transportation Security Administration ("TSA"), an agency within the United States Department of Homeland Security, is responsible for security in all modes of transportation. Longmire Decl.; docket 16, ¶ 3. As part of its statutory mandate with respect to aviation security, the TSA is required to provide for the screening for weapons, explosives, and other destructive substances, of all passengers and property that will be carried on passenger aircraft. To further these purposes, the TSA has implemented regulations requiring each aircraft operator to adopt security programs. When the TSA determines that additional security measures (in addition to the security programs) are necessary, it issues "Security Directives" to regulated aircraft operators. Id. at ¶ 5. Compliance by air carriers with Security Directives and emergency amendments is mandatory.

TSA has established Security Directives relating to two groups of individuals who have been assessed to pose a risk to aviation safety. The first group, identified on a "No–Fly List," consists of individuals who are prohibited from flying altogether. The second group, identified on a "Selectee List," consists of individuals who must be "selected" by air carriers for additional screening before they are permitted to fly. The Security Directives also prescribe the procedures to be followed, and the specific security measures to be taken by air carriers, when individuals identified on the No–Fly or Selectee lists seek to board an aircraft. Id. at ¶ 7. In this Order, both the "No–Fly List" and the "Selectee List" are collectively referred to as the "No–Fly List."

The Defendants distribute updated versions of the No–Fly List, as attachments to Security Directives and Emergency Amendments, to commercial airlines oper-

ating within the United States. The No–Fly List is also distributed to airport security personnel, customs and immigration agents, and other federal law-enforcement agencies. For security reasons, the TSA will not divulge the specific security measures followed by air carriers when they encounter an individual identified on the No–Fly List. Longmire Decl., docket 16, ¶ 9.

Plaintiffs commenced this action on behalf of themselves and other similarly situated individuals to challenge TSA's adoption, maintenance, dissemination, administration, and management of both the No–Fly List and the Selectee List.[1]

Plaintiffs allege they are innocent passengers with no links to terrorist activity, but have names similar or identical to names on the No–Fly List. Compl., docket no. 1, ¶ 3. Plaintiffs allege that when they travel by air, they are mistakenly identified by airport personnel, often in full view of co-workers and the general traveling public, as individuals whose names actually appear on the No–Fly List. As a result, Plaintiffs allege that airline personnel subjected them to enhanced security screening, including physical pat-downs, wanding, and physical searches of luggage. Plaintiffs allege that they do not feel free to leave. To date, no named Plaintiff has missed a flight or been subjected to enhanced screening for more than one hour.

Plaintiffs allege that Defendants have failed to disclose basic questions such as the criteria for placing names on or removing names from the No–Fly List, procedures for amending information on the No–Fly List, or rules for maintaining or managing the No–Fly List.

The TSA has instituted an ombudsman process whereby individuals can contest their placement on the No–Fly List. Defendants have submitted documents which describe the clearance process administered by the Office of the Ombudsman. *See* Notice of Filing, docket no. 26, Ex. A. However, Plaintiffs allege that the ombudsman process is not publicized, and individuals who are mistakenly associated with the No–Fly List are told that there is no recourse.

Plaintiffs allege that Defendants' actions in maintenance, management, and dissemination of the No–Fly list are unconstitutional. Plaintiffs specifically allege that the Defendants have "deprive[d] Plaintiffs of liberty and property interests protected by the Fifth Amendment" and have "subjected [Plaintiffs] to unreasonable searches and seizures in violation of the Fourth Amendment." Compl., docket no. 1, pp. 26–27. Plaintiffs seek declaratory judgment that the maintenance, management, and dissemination of the No–Fly List is unconstitutional, and seek to require Defendants to remedy the due process and Fourth Amendment defects of the No–Fly List. *Id.* at p. 27.

Defendants have moved to dismiss Plaintiffs' Complaint for lack of subject matter jurisdiction. Defendants contend that the Security Directives are final orders issued by the TSA, and that any action for judicial review must be filed with the Court of Appeals. In the alternative, Defendants have moved to dismiss Plaintiffs' claims for failure to state a claim for which relief can be granted. *See* D. Mot. to Dismiss, docket no. 15.

---

**1.** Although Plaintiffs' Complaint is broadly worded, Plaintiffs do not challenge the government's right to create or maintain either a No–Fly List or a Selectee List. Plaintiffs' counsel, at oral argument, stated the lawsuit does not in any way challenge the government's right to issue a Security Directive that says certain people should be on a No–Fly List, and in fact counsel said "we applaud that." Transcript, docket no. 29, 32:21–33:2.

By Minute Order dated October 29, 2004, docket no. 25, the Court ordered Defendants to submit for *in camera* and *ex parte* review the following:

(a) A copy of the applicable Security Directives;

(b) A copy of the ombudsman processes available for expunging innocent passengers' names from the No–Fly List;

(c) A copy of the procedures used for processing Passenger Identity Verification Forms.

Pursuant to the Court's Order, on November 2, 2004, Defendants submitted six Security Directives procedures, portions of the No–Fly List and Selectee List, the Applicable Policy Memorandum dated July 9, 2004 and April 22, 2003, and certain other materials. The Court has reviewed the Defendants' submissions *in camera* and these documents have been filed under seal.

## III. ANALYSIS OF JURISDICTIONAL ISSUES

(A) *Special Review Statutes for Orders under the Federal Aviation Act.*

Congress has enacted a special review statute for final orders of the Secretary of Transportation promulgated under the Federal Aviation Act. The applicable statute at issue, 49 U.S.C. § 46110(a), relating to judicial review, provides, in part, as follows:

[A] person disclosing a substantial interest in an order issued by the Secretary of Transportation (or the Under Secretary of Transportation for Security with respect to security duties and powers designated to be carried out by the Under Secretary or the Administrator of the Federal Aviation Administration with respect to aviation duties and powers designated to be carried out by the

Administrator) in whole or in part under this part, part B, or subsection (*l*) or (*s*) of section 114 may apply for review of the order by filing a petition for review in the United States Court of Appeals for the District of Columbia Circuit or in the court of appeals of the United States for the circuit in which the person resides or has its principal place of business. The petition must be filed not later than 60 days after the order is issued.[2]

Section 46110(a) and its predecessor statute found at § 1486(a) are "not to be given a narrow, technical reading; instead it is to be interpreted expansively." *San Diego Air Sports Center, Inc. v. Fed. Aviation Admin.*, 887 F.2d 966, 968 (9th Cir. 1989) (approving a similar interpretation of the predecessor statute by the Fourth, Seventh, Eighth and District of Columbia Circuits). The *San Diego Air Sports* court stated that it agreed with other courts that "the purposes of special review statutes—coherence and economy—are best served if courts of appeal exercise their exclusive jurisdiction over *final agency actions.*" *Id.* (quoting *Sima Prods. Corp. v. McLucas*, 612 F.2d 309, 313 (7th Cir.), *cert. denied*, 446 U.S. 908, 100 S.Ct. 1834, 64 L.Ed.2d 260 (1980)) (emphasis added). Thus, "the court of appeals' jurisdiction is exclusive with regard to review of final FAA action." *Clark v. Busey*, 959 F.2d 808, 811 (9th Cir.1992).

Plaintiffs raise two arguments in favor of district court jurisdiction. First, Plaintiffs argue that the Security Directives are not "final orders" within the meaning of § 46110. Second, even if they constitute final orders, jurisdiction is proper because (a) the agency decision did not consider the claims raised by Plaintiffs, and (b) Plaintiffs raise broad constitutional challenges. In addition, Plaintiffs argue that in

---

**2.** 49 U.S.C. § 46110(a) was previously codi- fied at 49 U.S.C. § 1486(a).

the event the Court considers the declaration of Lee Longmire, docket no. 16, regarding this Court's jurisdiction, the motion to dismiss should be converted into a motion for summary judgment. Plaintiffs further argue that in such event, Plaintiffs would be entitled to the following discovery, as outlined in the Shuford declaration, docket no. 19, before having to respond to the motion:

- Investigation regarding whether the Longmire Affidavit accurately describes the Security Directives;
- Investigation regarding whether the Security Directives address the problems asserted by plaintiffs regarding inaccurate listings or mistaken identity;
- Investigation regarding the process used to create the Security Directives;
- Investigation regarding the authorship of the Security Directives;
- Investigation regarding what, if any, agency procedures were available to consider the types of constitutional challenges asserted by plaintiffs; and
- Investigation regarding whether there was notice and opportunity to be heard before defendants issued the Security Directives.

*See* Shuford Decl., docket no. 19, ¶ 3.

 When resolving a Rule 12(b)(1) motion to dismiss for lack of jurisdiction, the Court may look beyond the Complaint to matters of public record without having to convert the motion into one for summary judgment. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir.2000). In this case, the Court has considered the declaration of Lee Longmire, docket no. 16. The declaration contains substantial facts within the public record. *See* Longmire Decl., docket no. 16, ¶¶ 1–8. However, the declaration also states that in view of the sensitive nature of the Security Directives, they cannot be further described on the public record. The Court has also reviewed the documents submitted by the government, at the Court's request, for *in camera* and *ex parte* review. The Court will not consider, for purposes of the motion to dismiss for lack of personal jurisdiction, the non-public records reviewed *in camera*. The Plaintiffs' motion to convert the motion to dismiss into a motion for summary judgment, and to allow discovery, is DENIED.

(B) *The Security Directives and No–Fly Lists are final orders within the meaning of § 46110(a).*

Section 46110 authorizes appellate review of "orders," which has been interpreted in the Ninth Circuit as follows:

'Order' carries a note of finality, and applies to any agency decision which imposes an obligation, denies a right, or fixes some legal relationship. In other words, if the order provides a 'definitive' statement of the agency's position, has a 'direct and immediate' effect on the day-to-day business of the party asserting wrongdoing, and envisions 'immediate compliance with its terms,' the order has sufficient finality to warrant the appeal offered by section [46110].

*Crist v. Leippe*, 138 F.3d 801, 804 (9th Cir.1998) (quoting *Mace v. Skinner*, 34 F.3d 854, 857 (9th Cir.1994)) (internal quotation marks and citations omitted).

 The No–Fly List and the Selectee List are Security Directives issued by TSA pursuant to 49 U.S.C. § 114(*l*)(2)(A), which authorizes the TSA to issue Security Directives without providing notice or the opportunity for comment in order to protect transportation security. These Security Directives provide a definitive statement of the TSA position and have a direct and immediate effect on persons listed on the No–Fly List, barring travel on commercial aircraft. Each aircraft operator is required by law to comply immediately

with Security Directives. 49 CFR § 1544.305(b).

Plaintiffs' argument that the Security Directives are not orders within the meaning of Section 46110 because the TSA has not created or published findings of fact or otherwise created an administrative record is without merit. In *San Diego Air Sports*, 887 F.2d at 970, the court held a letter from the FAA providing that parachuting would not be allowed in the San Diego Terminal Control area was an order, even though the record consisted of little more than the letter. *See also Southern California Aerial Advertisers' Ass'n v. Fed. Aviation Admin.*, 881 F.2d 672, 676 (9th Cir.1989) (letter from FAA prohibiting fixed wing aircraft over Los Angeles Airport was final order even though the entire administrative record in this case consisted of the letter and the FAA proposal). To be deemed final, the Security Directives need not result from lengthy administrative proceedings; rather, the Security Directives must only impose an obligation or define some legal right.

Furthermore, § 46110(a) grants the courts of appeal exclusive jurisdiction over orders that were issued without any form of adjudication. In 2003, Congress amended § 46110 and authorized the courts of appeal to review orders so long as the orders are promulgated "under this part, part B, or subsection (*l*) or (*s*) of section 114." 49 U.S.C. § 46110(a). *See also* Pub.L. No. 108–176, § 228, 117 Stat. 2490, 2532 (Dec. 12, 2003). Section 114(*l*)(2)(A) allows the TSA to issue security directives "without providing notice or an opportunity for comment." 49 U.S.C. § 114(*l*)(2)(A). Thus, Congress clearly intended the courts of appeal to review Security Directives issued absent any form of

adjudication, and Plaintiffs' arguments to the contrary are without merit.

The Security Directives are "orders" for the purposes of § 46110(a), and the courts of appeal have exclusive jurisdiction over Plaintiffs' claims relating to them. *Clark*, 959 F.2d at 811.[3] Thus, to the extent these Security Directives establish a No–Fly List of persons who are prohibited from flying, or create a Selectee List resulting in persons who will be selected for additional enhanced screening and resulting delays, this Court has no subject matter jurisdiction.

In contrast, to the extent Plaintiffs challenge the procedures administered by the Office of the Ombudsman, to allow plaintiffs with names identical or similar to names on the No–Fly List to be cleared, the procedures are not "orders" within the meaning of § 46110(a). Rather, the clearance procedures are voluntary procedures which allow individuals who are delayed as a result of enhanced screening to attempt to expedite future airline check-in procedures. These procedures allow interested persons, including Plaintiffs, to avoid the heightened screening procedures. Because these procedures are not "orders" within the meaning of § 46110, the Court has jurisdiction to consider Plaintiffs' Fifth Amendment Due Process claims relative to these procedures.

(C) *Plaintiffs' Broad Constitutional Challenges*

■ Plaintiffs contend that even if the Security Directives are "orders" within the meaning of § 46110, this Court also has jurisdiction because Plaintiffs raise broad constitutional challenges to the Security Directives. The question presented is whether Plaintiffs' claims are "inescapably

---

**3.** At oral argument, counsel for Plaintiffs conceded that the Security Directives would be an order "until such time comes about where

we may have the opportunity to find out more about them specifically." Transcript, docket no. 29, 27:20–23.

intertwined" with a review of the procedures and merits surrounding the Security Directives, or raise broad constitutional challenges which do not require a review of the procedures and merits of the Security Directives themselves. *Crist,* 138 F.3d at 803; *Mace,* 34 F.3d at 858. If the challenge is inescapably intertwined with a review of the procedures and merits surrounding the Security Directives, jurisdiction is solely with the courts of appeal. *Greenwood v. Fed. Aviation Admin.,* 28 F.3d 971, 975 (9th Cir.1994); *Tur v. Fed. Aviation Admin.,* 104 F.3d 290, 291–92 (9th Cir.1997).[4] On the other hand, if the claims raise broad constitutional challenges that are not inescapably intertwined with the Security Directives, this Court would have jurisdiction to consider the issues raised notwithstanding the fact that they constitute orders within the meaning of § 46110. *Crist,* 138 F.3d at 803. The Ninth Circuit has clearly set forth the question to be answered to determine jurisdiction for broad constitutional challenges. However, the application of the guiding principles announced in these decisions is more problematic. A close review of the Plaintiffs' claims is therefore necessary and instructive.

### (1) *Count I: Violation of Fifth Amendment Right to Due Process.*

Plaintiffs' Complaint raises a broad constitutional attack against the TSA's administration and maintenance of the No–Fly List under the Fifth Amendment. *See* Compl., docket no. 1, ¶¶ 104–05. More specifically, Plaintiffs allege in Count I that individuals whose names are identical or similar to those on the No–Fly List are "stigmatized and subjected to interrogations, delays, enhanced body and luggage searches, detentions, and/or other travel impediments," and that these "deprivations are without due process of law because Defendants have failed to provide constitutionally adequate mechanisms for Plaintiffs to avoid being subjected to the stigma, interrogations, delays, enhanced searches, detentions, and/or other travel impediments associated with having a name identical or similar to a name on the No–Fly List." *Id.* at ¶¶ 104–05. As a result, Plaintiffs allege they have been deprived of liberty and property interests protected by the Fifth Amendment. *Id.* at ¶ 105.

### (2) *Count II: Violation of the Fourth Amendment*

In Count II, Plaintiffs allege that "Defendants actions in administrating and maintaining the No–Fly List cause plaintiffs to be subjected to unreasonable searches and seizures in violation of the Fourth Amendment." *Id.* at 27.

### (3) *Relief Sought by Plaintiffs*

Plaintiffs' Complaint seeks broad equitable relief to modify the Security Directives in a fashion to make them constitutional. However, at oral argument, Plaintiffs' counsel substantially narrowed the remedy sought, as follows: Plaintiffs' counsel conceded that (a) Plaintiffs do not challenge the adoption of the Security Directives or the procedures followed before they were implemented, Transcript, docket no. 29, 42:5–9, or the government's right to issue a Security Directive that says certain people should be on a No–Fly List, *id.* at 32:21–33:2; and (b) Plaintiffs do not challenge the government's decision that, if someone has a name similar to someone who is on the No–Fly List, "that there

---

**4.** At oral argument, Plaintiffs' counsel conceded that to the extent the challenges are inescapably intertwined with the review of procedure and merits of the Security Directives, this Court would not have jurisdiction. Transcript, docket no. 29, 31:19.

should be additional security to that person." *Id.* at 33:4–10.

The gist of what Plaintiffs do challenge in this litigation is the enhanced scrutiny and resulting delays incurred by the Plaintiffs who have identical or similar names to persons on the No–Fly List. Plaintiffs' counsel stated this narrowed focus at oral argument as follows:

we are seeking some remedy that would allow Plaintiffs to avoid the ongoing and repeated investigations, interrogations, detention, delays and enhanced searches that they've experienced virtually every time they fly.

*Id.* at 28:6–13.

A careful review of Plaintiffs' claims in their Complaint demonstrates that Plaintiffs advance three basic challenges to the Security Directives: (1) the adoption, maintenance, and dissemination of the No–Fly List violates the Fourth and Fifth Amendments; (2) the heightened security screening measures that Plaintiffs were subjected to resulted in unconstitutional seizures in violation of the Fourth Amendment; and (3) that Defendants failed to provide constitutionally adequate remedial procedures in violation of the Fifth Amendment.

#### (4) *Analysis of Claims and Relief Sought*

Plaintiffs' challenge to the adoption, maintenance, and dissemination of the No–Fly List under the Fourth and Fifth Amendments is inescapably intertwined with a review of the procedures and merits surrounding the adoption of the No–Fly List. Plaintiffs' challenge here, to the extent it remains after the concessions at oral argument, would involve a direct challenge to the adoption and maintenance of the Security Directives. *Greenwood,* 28 F.3d at 975; *Crist,* 138 F.3d at 803. As a result, this Court does not have jurisdiction to consider these alleged constitutional challenges.

Plaintiffs' challenge to the heightened security measures under the Fourth Amendment is also inescapably intertwined with a review of the Security Directives. The TSA is required to "identify individuals on passenger lists who may be a threat to civil aviation or national security," and when such an individual is identified, to prevent him or her "from boarding an aircraft" or "take appropriate action ...." 49 U.S.C. § 114(h)(3). The TSA is authorized to issue Security Directives prescribing specific security measures when such measures "are necessary to respond to a threat assessment or a specific threat against civil aviation." 49 C.F.R. § 1544.305(a). Security Directives also include instructions to air carriers of the security procedures to be followed when individuals identified on the No–Fly List attempt to board commercial aircraft. Longmire Decl., docket no. 16, ¶¶ 4–9.

Plaintiffs allege that by having names similar or identical to names on the No–Fly List, they are subjected to unconstitutional searches and seizures, and Plaintiffs argue that their allegations are broad constitutional challenges to this agency action. However, Plaintiffs' Fourth Amendment claims are distinguishable from the claims in *Crist* and *Mace,* where the plaintiffs brought broad constitutional challenges that were severable from the merits of the order revoking their licenses. Here, Plaintiffs do not challenge agency procedures in promulgating the Security Directives. Plaintiff's Fourth Amendment claims challenge the merits of the security and screening procedures mandated by the Security Directives, and any adjudication of Plaintiffs' Fourth Amendment claims is inescapably intertwined with a review of the Security Directives. Furthermore, Plaintiffs ask this Court to remedy the

alleged Fourth Amendment defects in the No–Fly List by issuing an injunction requiring Defendants to modify or amend the challenged security and screening procedures. Compl., docket no. 1, at 27. Thus, Plaintiffs' Fourth Amendment claims necessarily would involve a review of the security and screening procedures mandated by the Security Directives, and jurisdiction to challenge these issues is exclusively limited to the courts of appeal pursuant to statute. 49 U.S.C. § 46110; *Crist,* 138 F.3d at 803.

Finally, Plaintiffs contend that Defendants have failed to provide constitutionally adequate remedial procedures in violation of the Fifth Amendment. Plaintiffs correctly argue that the TSA Ombudsman Clearance Procedures do not constitute "orders" for the purposes of § 46110. The Ombudsman Clearance Procedures have established a voluntary procedure whereby individuals may attempt to expedite future check-in procedures. Thus, the Court has jurisdiction to consider Plaintiffs' Fifth Amendment due process claim.

As a result, and for the reasons stated in this Order, this Court does not have jurisdiction to consider Plaintiffs' claims in Count I relating to the administering and maintaining of the No–Fly List, or any resulting liberty or property interest protected by the Fifth Amendment. Similarly, this Court does not have jurisdiction to consider Plaintiffs' Fourth Amendment claims in Count II of the Complaint. Defendants' motion to dismiss these claims for lack of subject matter jurisdiction is GRANTED. However, to the extent Plaintiffs' Fifth Amendment claim challenges the Ombudsman Clearance Procedures, this Court does have subject matter jurisdiction because such procedures do not constitute orders. It will therefore be necessary to address Defendants' Second Motion to Dismiss this remaining claim for

failure to state a claim on which relief can be granted.

## IV. DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

The Fifth Amendment guarantees that no person shall be deprived of a liberty or property interest without due process of law. U.S. CONST. Amend V. Plaintiffs contend they have been deprived of a constitutionally protected liberty and property interest. Plaintiffs contend that "the government stigmatized plaintiffs by identifying them on the No–Fly Lists, and, as a result, plaintiffs were treated as suspected terrorists." Opposition brief, docket no. 18, at 10. Plaintiffs complain that adequate process is not available to provide clearance for persons who have been mistakenly identified in the No–Fly Lists. Although Defendants have instituted an ombudsman process to provide clearance, Plaintiffs allege these procedures do not provide adequate notice or a meaningful opportunity to clear their names. Complaint, docket no. 1, ¶¶ 30, 34, 50, 64–66. Defendants have served and filed publicly available documents that describe the expedited No–Fly List and Selectee List Clearance Process, administered by the Office of the Ombudsman of the TSA. *See* Notice of Submission, docket no. 26. Defendants have submitted evidence that three of the named Plaintiffs have been "cleared" through the TSA Ombudsman process. Several other Plaintiffs have failed to use the procedures established by the Ombudsman process. All Plaintiffs allege the procedures are inadequate and violate the Fifth Amendment.

Plaintiffs raise a constitutional challenge to the procedures *after* the No–Fly Lists have been promulgated. Plaintiffs allege that the Defendants have "failed to provide constitutionally adequate mechanisms for

Plaintiffs to avoid being subjected to the stigma, interrogations, delays, enhanced searches, detentions, and/or other travel impediments associated with having a name identical or similar to a name on the No–Fly List," Complaint, docket no. 1, ¶ 105. Thus, Plaintiffs have alleged a violation of their due process rights.[5]

Defendants contend that unless Plaintiffs can establish a protected "property" or "liberty" interest protected by the Fourth Amendment, the Court need not address whether the government procedures comport with due process. To make out a claim under the Due Process Clause of the Fifth Amendment, Plaintiffs must show: (1) a deprivation of a constitutionally-protected liberty or property interest; and (2) a denial of adequate procedural protections. *Hufford v. McEnaney*, 249 F.3d 1142, 1150 (9th Cir.2001). "The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.'" *American Mfr. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999). Plaintiffs do not argue that they were deprived of a property interest. Instead, Plaintiffs argue that the alleged searches and seizures deprived them of liberty interests protected by the Fourth Amendment. To the extent Plaintiffs base their Fifth Amendment claim on the heightened security measures prescribed by the Security Directives, the Court does not have jurisdiction to consider the claim. However, Plaintiffs' Fifth Amendment claim is also based on the stigma-plus doctrine.

■ To prevail on a claim under the stigma-plus doctrine, Plaintiffs must show (1) public disclosure of a stigmatizing statement by the government, the accuracy of which is contested; plus (2) the denial of some more tangible interest such as employment,' or the alteration or a right or status recognized by state law. *Ulrich v. City & County of San Francisco*, 308 F.3d 968, 982 (9th Cir.2002) (citing *Paul v. Davis*, 424 U.S. 693, 701, 711, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976)). "[T]he 'plus' must be a deprivation of a liberty or property interest by the state that directly affects the plaintiffs' rights." *Miller v. Cal. Dep't of Soc. Services*, 355 F.3d 1172, 1178 (9th Cir.2004).

■ Plaintiffs sufficiently plead that there have been stigmatizing statements made by government officials, the accuracy of which is uncontested. When a statement "might seriously damage [the Plaintiffs'] standing and associations in [their] community," it is sufficiently stigmatizing for the purpose of a stigma-plus analysis. *Vanelli v. Reynolds Sch. Dist. No. 7*, 667 F.2d 773, 777 n. 5 (9th Cir.1982). Plaintiffs all allege that they have been publicly associated with the No–Fly List. *See* Compl., docket no. 1, ¶¶ 23, 41, 54, 60, 62, 72, 81, 86, 89, 90, 94. As Plaintiffs point out, there can be little doubt that association with a government terrorist watch-list "might seriously damage [Plaintiffs'] standing and associations in [their] community," *Vanelli*, 667 F.2d at 777 n. 5, and Defendants have not argued otherwise.

However, Plaintiffs fail to satisfy the "plus" prong of the stigma-plus doctrine.

---

**5.** Defendants argue on the merits that "the procedural protections afforded by the Government fully conform with due process requirements." Reply Br., docket no. 22, p. 12. The Government notes that all Plaintiffs have been offered an opportunity to establish they are not on the No–Fly List and do not pose a threat to civil aviation, through the proce-

dures established. The Court will not consider the merits of the Defendants' arguments in connection with a motion to dismiss under Rule 12(b)(6) for failure to state a claim. *Jacobson v. Hughes Aircraft Co.*, 105 F.3d 1288, 1292 (9th Cir.1997). Defendants' arguments on the merits can only be evaluated at summary judgment or trial.

The "plus" prong is "the denial of 'some more tangible interest[ ] such as employment,' or the alteration of a right or status recognized by state law." *Ulrich*, 308 F.3d at 982 (quoting *Paul*, 424 U.S. at 701, 711, 96 S.Ct. 1155). Plaintiffs argue that the "plus" factor need not amount to a constitutional violation. Indeed, courts have found the "plus" factor satisfied in a variety of contexts. In *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1316–17 (9th Cir.1989), the court found the "plus" factor satisfied when an individual's business was injured as a result of a stigmatizing statement by government officials. In *Ulrich*, the court found the "plus" factor satisfied when an employer refused to rehire an individual, even when the individual had no enforceable right, under either state or federal law, to reinstatement. 308 F.3d at 982–83. In *Wisconsin v. Constantineau*, 400 U.S. 433, 435, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971), the Supreme Court found a due process violation under the stigma-plus theory where the stigma resulted in the individual's inability to purchase alcohol. However, all the cases applying the stigma-plus doctrine are accompanied by some additional deprivation of liberty or property. Thus, the "plus" "must be a deprivation of liberty or property ... that directly affects the [Plaintiffs'] rights." *Miller v. Cal. Dept. of Soc. Services*, 355 F.3d 1172, 1178 (9th Cir.2004).

Plaintiffs, in the present matter, argue that their status has been altered because they are no longer able to travel like other airline passengers because of their alleged association with the No–Fly List. While Plaintiffs have a right to travel throughout the United States "uninhibited by statutes, rules, and regulations which unreasonably burden or restrict movement," *Saenz v. Roe*, 526 U.S. 489, 499, 119 S.Ct. 1518, 143 L.Ed.2d 689 (1999), it is also true that "burdens on a single mode of transportation do not implicate the right to interstate travel." *Miller v. Reed*, 176 F.3d 1202,

1205. Thus, Plaintiffs do not have a right to travel without any impediments whatsoever. Indeed, Plaintiffs do not allege that they have suffered impediments different than the general traveling public.

■ Plaintiffs also argue that their status has been altered because they have been publicly associated with the No–Fly List in full view of co-workers and the general traveling public. *See* Compl., docket no. 1, ¶¶ 23, 41, 54, 60, 62, 72, 81, 86, 89, 90, 94. However, "injury to reputation alone is insufficient to establish a deprivation of a liberty interest protected by the Constitution." *Ulrich*, 308 F.3d at 982. Plaintiffs have not alleged any tangible harm to their personal or professional lives that is attributable to their association with the No–Fly List, and which would rise to the level of a Constitutional deprivation of a liberty right. Furthermore, Plaintiffs have not alleged any injury to a property interest as a result of the disclosure of allegedly stigmatizing statements. Plaintiffs have not plead any tangible harm that satisfies the "plus" prong. Therefore, Plaintiffs have failed to state a stigma-plus Fifth Amendment claim.

## V. *CONCLUSION*

For the reasons stated in this Order, Defendants' Motion to Dismiss for lack of jurisdiction is GRANTED, except for the Fifth Amendment Due Process claim as it relates to the clearance procedures established by the TSA. However, Plaintiffs have failed to state a claim upon which relief can be granted as to that claim. As a result, Plaintiffs' Complaint must be dismissed, without prejudice, for the reasons set forth in this Order.

IT IS SO ORDERED.