PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

JONATHAN BLITZ and MARLA
TUCHINSKY, individually and as
legal guardians of EB, their minor
child,

        *Plaintiffs-Appellants,*

        v.

JANET NAPOLITANO, in her official
capacity as Secretary of Homeland
Security; JOHN S. PISTOLE, in his
official capacity as the
Administrator of the
Transportation Security
Administration,

        *Defendants-Appellees.*

No. 11-2283

Appeal from the United States District Court
for the Middle District of North Carolina, at Greensboro.
William L. Osteen, Jr., District Judge.
(1:10-cv-00930-WO-WWD)

Argued: October 25, 2012

Decided: November 30, 2012

Before KING and FLOYD, Circuit Judges, and R. Bryan
HARWELL, United States District Judge
for the District of South Carolina,
sitting by designation.

Affirmed by published opinion. Judge King wrote the opinion, in which Judge Floyd and Judge Harwell joined.

---

## COUNSEL

**ARGUED:** Jonathan Blitz, Durham, North Carolina, for Appellants. Sydney A.R. Foster, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees. **ON BRIEF:** Stuart F. Delery, Acting Assistant Attorney General, Mark B. Stern, Sharon Swingle, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Ripley Eagles Rand, United States Attorney, Greensboro, North Carolina, for Appellees.

---

## OPINION

KING, Circuit Judge:

Jonathan Blitz, his wife Marla Tuchinsky, and their minor child EB (collectively, the "Plaintiffs") appeal from the district court's dismissal of their Complaint for declaratory and injunctive relief. In December 2010, the Plaintiffs initiated this proceeding in the Middle District of North Carolina against Janet Napolitano, as Secretary of Homeland Security, and John Pistole, as Administrator of the Transportation Security Administration (together, the "Defendants"), challenging the use of advanced imaging technology ("AIT") scanners and invasive pat-downs at airport screening checkpoints in the United States. On September 12, 2011, the Defendants secured dismissal of the Complaint under Federal Rule of Civil Procedure 12(b)(1), for lack of subject matter jurisdiction in the district court. *See Blitz v. Napolitano*, No. 1:10-cv-00930 (M.D.N.C. Sept. 12, 2011) (the "Dismissal Order").[1] As the district court recognized, § 46110 of Title 49

---

[1]The Dismissal Order is found at J.A. 117-19. (Citations herein to "J.A. ____" refer to the contents of the Joint Appendix filed by the parties in this appeal.)

vests exclusive jurisdiction in an appropriate court of appeals with respect to a challenge to an order issued by the Administrator of the Transportation Security Administration (the "TSA").

On appeal, the Plaintiffs maintain that the district court erred in so ruling because the TSA's standard operating procedures for checkpoint screening (the "Checkpoint Screening SOP") — which includes AIT scanners and passenger patdowns — does not constitute an "order" under 49 U.S.C. § 46110. Alternatively, the Plaintiffs say, § 46110's conferral of exclusive jurisdiction in a court of appeals deprives them of due process and contravenes the separation of powers rooted in the Constitution. As explained below, we reject the Plaintiffs' contentions and affirm.

## I.

## A.

The federal statutes relating to transportation and aviation are codified in Title 49 of the United States Code. The provision at issue in this appeal is found at 49 U.S.C. § 46110, which, for our purposes, has two aspects: (1) it authorizes the filing, in an appropriate court of appeals, of a petition for review of an order issued by the TSA Administrator; and (2) it specifies that the court of appeals will possess exclusive jurisdiction to review the petition.[2] With this statutory predi-

---

[2]Section 46110 of Title 49 provides, in pertinent part, as follows:

(a) *Filing and venue.* . . . [A] person disclosing a substantial interest in an order issued by the [TSA Administrator] in whole or in part under [a specified statute] may apply for review of the order by filing a petition for review in the [court of appeals for the D.C. Circuit] or in the court of appeals . . . for the circuit in which the person resides or has its principal place of business. . . .

. . . .

cate in mind, we turn to the pertinent factual and procedural background of these proceedings.

## B.

Following the events of September 11, 2001, the TSA was created by statute and vested with the primary responsibility for day-to-day security of air passenger traffic in this country. The TSA commenced its testing and evaluation of AIT scanners in 2007, and, in 2009, Congress appropriated funds for the TSA's procurement and installation of such scanners and other explosives detection systems. On January 7, 2010, in response to an attempted Christmas Day bombing in Detroit, the President directed the Department of Homeland Security, as the TSA's parent agency, to aggressively pursue the use of enhanced screening technology in aviation. To date, the TSA has approved two types of AIT scanners for operational use at airports: one utilizes backscatter x-ray technology; the other uses millimeter-length radio waves. Such modern technologies are able to detect anomalies underneath an air passenger's clothing, including small threat items and non-metallic explosive devices such as those concealed on the Christmas Day bomber. A passenger opting out of an AIT scan is subjected to a pat-down.

According to the declaration of TSA Administrator Pistole (the "Declaration"), *see* J.A. 46-68, the TSA has adopted the Checkpoint Screening SOP for use at all airports, but the details of those procedures have not been revealed publicly.[3] The Declaration explained that,

---

(c) *Authority of court.* . . . [T]he court has exclusive jurisdiction to affirm, amend, modify, or set aside any part of the order and may order the [TSA Administrator] to conduct further proceedings. . . .

49 U.S.C. § 46110(a), (c).

[3]After submitting the Declaration in opposition to the Plaintiffs' request for interim injunctive relief, the Defendants relied on it in support of their

in January 2010, the TSA determined that AIT should be deployed as part of its primary screening program. This decision is reflected in TSA's Standard Operating Procedures (SOP) for checkpoint screening, which was most recently revised on September 17, 2010, and implemented on October 29, 2010. Although the Checkpoint Screening SOP is not public, it sets forth the mandatory procedures that . . . passengers must follow in order for a passenger to enter the sterile area of the airport. I approve[d] the SOP prior to its issuance and the SOP constitutes TSA's final agency decision requiring the use of AIT machines and implementing their use as a part of TSA's standard security screening procedures.

*Id.* 53-54. The Declaration further explained that a passenger choosing to opt out of an AIT scan will undergo a pat-down, and the Checkpoint Screening SOP mandates how such a pat-down is conducted.[4] The Checkpoint Screening SOP was not filed with the Declaration because, as Pistole averred therein, the specifics of the procedures constitute sensitive security information. *See* 49 U.S.C. § 114(r).[5]

---

Rule 12(b)(1) dismissal motion. *See Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004) ("[W]hen a defendant challenges subject matter jurisdiction via a Rule 12(b)(1) motion to dismiss, the district court may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings . . . .").

[4]The Declaration specified that the device utilized in the Christmas Day bombing attempt near Detroit was hidden on a sensitive part of the terrorist's body. Partially in response to that incident, the standard TSA pat-down was modified to include an inspection of the passenger's upper thigh and groin area. Although earlier pat-down procedures had used only the back of the hand, a TSA officer conducting the new pat-down is entitled to use the front of the hand in certain circumstances.

[5]Pursuant to 49 U.S.C. § 114(r), the TSA Administrator is obliged to "prescribe regulations prohibiting the disclosure of information obtained

The Plaintiffs' two-count Complaint of December 3, 2010, alleges that the TSA's use of AIT scanners and invasive pat-downs is unconstitutional. According to the Complaint, Plaintiff Tuchinsky has opted out of AIT screenings on two occasions at Raleigh-Durham International Airport; on each of those occasions, she was subjected to a pat-down that was highly invasive and humiliating. The Complaint further alleges that AIT scanners emit radiation that damages human DNA and other cell components; that the invasive pat-downs and AIT scanner emissions are especially harmful to children; and that the Plaintiffs will suffer irreparable harm if they are subjected to AIT screenings or pat-downs prior to travelling by air. Finally, the Complaint asserts that AIT scanners produce a near photographic quality image of a passenger's naked body, and that the Defendants have misrepresented the health risks posed by AIT scanners as well as the storage and data transfer capabilities thereof.

The Complaint seeks a declaration from the district court that the TSA's use of AIT scanners and invasive pat-downs violates the Fourth Amendment. The Complaint also requests injunctive relief barring the Defendants from subjecting the Plaintiffs to either AIT screenings or invasive pat-downs unless and until they are permitted to challenge the constitutionality of those practices.

---

or developed in carrying out security . . . under chapter 449 of [Title 49]." Chapter 449 of Title 49 contains, inter alia, the requirement that the TSA "provide for the screening of all passengers and property . . . that will be carried aboard a passenger aircraft." 49 U.S.C. § 44901(a). The pertinent regulations deem the following to be sensitive security information that may not be publicly released: TSA security directives or orders; the identities of individuals on no-fly and selectee lists; and "[s]ecurity screening information," including "[a]ny procedures, . . . instructions, and implementing guidance pertaining thereto, for screening of persons . . . that is conducted by the Federal government or any other authorized person." *See, e.g.*, 49 C.F.R. §§ 15.5(b), 15.9, 1520.5(b), 1520.9.

C.

On February 7, 2011, the Defendants moved to dismiss the Complaint pursuant to Rule 12(b)(1), maintaining that the court lacked subject matter jurisdiction. The motion asserted that the Checkpoint Screening SOP constitutes an "order" issued by the TSA Administrator under 49 U.S.C. § 46110, and that a challenge to the order can be pursued only in an appropriate court of appeals. The Defendants relied on Pistole's Declaration in support of their motion, but also offered to provide the Checkpoint Screening SOP to the district court for *in camera* review.

On September 8, 2011, at the conclusion of a hearing on the Rule 12(b)(1) motion, and without having reviewed the Checkpoint Screening SOP, the district court announced that it would grant the Defendants' dismissal request. Noting that its ruling was without prejudice to the Plaintiffs, the court observed that, "therefore, Mr. Blitz, I don't believe you'll be in any way barred from, refiling, — whether you choose to appeal my ruling or refile in the Circuit Court, I think you would be free to do that." J.A. 114. Four days thereafter, the court entered its Dismissal Order, expressly adopting the reasoning of the district court for the District of Columbia in its dismissal of a similar case. *See Durso v. Napolitano*, 795 F. Supp. 2d 63 (D.D.C. 2011) (granting Rule 12(b)(1) motion and dismissing, on basis of 49 U.S.C. § 46110, air passengers' challenge to TSA's implementation of AIT scanners and pat-downs), *aff'd sub nom. Roberts v. Napolitano*, 463 F. App'x 4 (D.C. Cir. 2012). The Plaintiffs have noticed a timely appeal of the judgment of dismissal, asserting appellate jurisdiction under 28 U.S.C. § 1291.

II.

Because the Complaint was dismissed without prejudice, we first assess the question of appellate jurisdiction. As a general proposition, a dismissal without prejudice by a district

court is not an appealable order under 28 U.S.C. § 1291 if "the plaintiff could save his action merely by amending his complaint." *Domino Sugar Corp. v. Sugar Workers Local Union 392*, 10 F.3d 1064, 1066-67 (4th Cir. 1993). The significance of the *Domino Sugar* principle is that we must "evaluate the particular grounds for dismissal . . . before either permitting or prohibiting appeals from dismissals without prejudice." *GO Computer, Inc. v. Microsoft Corp.*, 508 F.3d 170, 176 (4th Cir. 2007) (internal quotation marks omitted). As Judge Wilkinson has explained, "'[t]he test for finality is not whether the suit is dismissed with prejudice or without prejudice. . . . The test is whether the district court has finished with the case.'" *Id.* (quoting *Hill v. Potter*, 352 F.3d 1142, 1144 (7th Cir. 2003)).

We are satisfied that, in this situation, the Dismissal Order qualifies as a final decision properly appealable under 28 U.S.C. § 1291. As explained heretofore, the district court concluded that the exclusive jurisdiction provision in 49 U.S.C. § 46110 required dismissal for lack of subject matter jurisdiction. And it is apparent that the court dismissed the Complaint without prejudice in order to permit the Plaintiffs, if they choose, to pursue relief by way of a petition for review in an appropriate court of appeals. Put simply, the filing of an amended complaint could not have solved the Plaintiffs' jurisdictional problem in the district court. In these circumstances, we possess appellate jurisdiction under § 1291 to review the propriety of the Dismissal Order.

## III.

We thus turn to the merits of the Dismissal Order, which we assess de novo. *See Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004). In their opening brief, the Plaintiffs identify three issues for resolution:

- "A secret agency order, affecting fundamental rights promulgated unilaterally and internally,

with no indicia of an administrative record, subject only to deferential review in the Circuit Courts is inconsistent with due process and separation of powers";

- "The [Checkpoint Screening] SOP is not a 'final order' under 49 U.S.C. § 46110"; and

- "The District Court erred in making a dispositive decision in applying the jurisdictional limitation in 49 U.S.C. § 46110, by finding a document [the Checkpoint Screening SOP] to be a 'final order' subject to the exclusive jurisdiction of the Court of Appeals without first reviewing the actual document."

*See* Br. of Appellants 7-8. Because the Plaintiffs' second and third issues are nonconstitutional in nature, we evaluate them before turning to the Plaintiffs' first, constitutional issue. *See Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring) ("It is not the habit of the court to decide questions of a constitutional nature unless absolutely necessary to a decision of the case." (internal quotation marks omitted)).

### A.

### 1.

We initially address whether the district court erred by applying 49 U.S.C. § 46110 to the Checkpoint Screening SOP without reviewing the written procedures themselves. To establish error, the Plaintiffs rely on *Kerns v. United States*, 585 F.3d 187 (4th Cir. 2009). Unfortunately for the Plaintiffs, *Kerns* simply recognized that when "jurisdictional facts are inextricably intertwined with those [facts] central to the merits, the [district] court should resolve the relevant factual disputes only after appropriate discovery." *Id.* at 193. The

controlling jurisdictional fact in *Kerns* — whether an employee was acting within the scope of her employment for purposes of the Federal Tort Claims Act — has no analog in this proceeding. That is, the issue of whether the Checkpoint Screening SOP constitutes an order under § 46110 is purely a legal question that can be readily resolved in the absence of discovery.

The Plaintiffs persist, however, that Judge Ervin's decision in *City of Alexandria v. Helms*, 728 F.2d 643 (4th Cir. 1984), supports the proposition that the record below was insufficient to support the district court's conclusion that the Checkpoint Screening SOP is a § 46110 order. Applying the statutory predecessor of § 46110 to an order of the Federal Aviation Administration (the "FAA") relating to aircraft flight patterns at Washington National Airport, *City of Alexandria* explained that the FAA's order would be subject to review in a court of appeals if, inter alia, it were "capable of review on the basis of an administrative record". *Id.* at 646.[6]

The Defendants did not file an administrative record in the district court. They have, however, advised us that the TSA produced an extensive administrative record in a similar D.C. Circuit case, *Electronic Privacy Information Center v. United States Department of Homeland Security*, 653 F.3d 1 (D.C. Cir. 2011), and represented that the TSA would submit the relevant administrative record if the Plaintiffs file a petition in an appropriate court of appeals. In these circumstances, we have no trouble concluding that the Checkpoint Screening SOP is "capable of review on the basis of an administrative record." *City of Alexandria*, 728 F.2d at 646.

---

[6]Our *City of Alexandria* decision involved application of 49 U.S.C. § 1486, the statutory predecessor to § 46110. In 1994, § 1486 was recast into § 46110, with minor and nonsubstantive modifications. *See* Act of July 5, 1994, Pub. L. 103-272, 108 Stat. 745.

## 2.

Being satisfied that the record was sufficient to answer the jurisdictional question in the district court, we turn to the issue of whether the Checkpoint Screening SOP constitutes an order subject to 49 U.S.C. § 46110. The Plaintiffs appear to contend that the application of § 46110 is substantially limited — that is, it applies only to orders issued by the TSA Administrator after the completion of adjudicatory proceedings where affected persons have been accorded an opportunity to participate.[7] None of our sister circuits have adopted such a narrow view of § 46110, however, and the adoption of the Plaintiffs' interpretation would contravene the plain language of the statute and controlling precedent.

During the pendency of this appeal, the Supreme Court, in *Elgin v. Department of Treasury*, 132 S. Ct. 2126 (2012), rendered a decision that both parties deem relevant to our assessment of the scope of § 46110. The *Elgin* Court explained that, "where Congress simply channels judicial review of a constitutional claim to a particular court," the appropriate inquiry is "whether Congress' intent to preclude district court jurisdiction [is] fairly discernible in the statutory scheme." *Id.* at 2132 (internal quotation marks omitted). To determine whether it is "fairly discernible" that Congress intended to bar the district court from exercising jurisdiction in this proceeding, *Elgin* directs us to examine the text, structure, and purpose of § 46110. In so doing, we have no reason to look beyond the plain text of the statute, in which Congress clearly expressed its intention that any legal challenge to a § 46110 order, including a proceeding like the one at bar, be brought in the first instance in a court of appeals.

---

[7]Notably, the Plaintiffs in no way suggest that the TSA's checkpoint procedures were not "issued by the [TSA Administrator] in whole or in part under [a specified statute]," as required by 49 U.S.C. § 46110(a). The statutes specified in § 46110(a) include 49 U.S.C. § 114(s) (since recast as § 114(r)) and § 44901(a). *See supra* note 5.

Our *City of Alexandria* decision further established that, for an order to be subject to review in a court of appeals, it must represent the "final disposition of the matter it addresses." *See* 728 F.2d at 646. Because the Checkpoint Screening SOP's implementation on October 29, 2010, conclusively settled the agency's position with respect to the use of AIT scanners and passenger pat-downs, those procedures represent the TSA's final disposition of the matter. Accordingly, we are satisfied that the district court did not err in ruling that the Checkpoint Screening SOP constitutes an order of the TSA Administrator under § 46110.[8]

### B.

There being no merit in the Plaintiffs' nonconstitutional issues, we move on to the question of whether the appellate review procedures mandated by 49 U.S.C. § 46110 are inconsistent with due process and separation of powers. On appeal, the Plaintiffs focus on the theory that the provision of § 46110 channeling review to the courts of appeals would, for several reasons, contravene their due process rights. In support of their theory, the Plaintiffs offer little more than bald assertions that they cannot be forced to litigate in the first instance in a court of appeals.

### 1.

The Plaintiffs' due process argument faces numerous insurmountable hurdles. Under Article III of the Constitution, the district courts and the courts of appeals of the United States constitute those "inferior Courts" which possess only the jurisdiction granted them by Congress. *See* U.S. Const. art.

---

[8]Two important practical considerations further demonstrate that the Checkpoint Screening SOP is a "final order" for purposes of judicial review. Those procedures are in fact now being used by the TSA at airports throughout the United States, and Plaintiff Tuchinsky has been, as the Complaint alleges, personally subjected to invasive pat-downs.

III, § 1 ("The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish."). In adopting § 46110, Congress has spoken — plainly and clearly — that a court of appeals is to hear, in the first instance, a challenge to an order of the TSA Administrator. Indeed, we have no authority or power to decide otherwise. *See Cary v. Curtis*, 44 U.S. 236, 245 (1845) (observing that Congress "possess[es] the sole power of creating the [inferior] tribunals . . . and of investing them with jurisdiction either limited, concurrent, or exclusive, and of withholding jurisdiction from them in the exact degrees and character which to Congress may seem proper for the public good").

Tellingly, the Plaintiffs have presented us with no judicial authority for the proposition that § 46110 — or any provision channeling review to a particular court — contravenes the Constitution. Indeed, we have consistently affirmed the propriety of such statutes where statutory and constitutional claims can be meaningfully addressed in the courts of appeals. *See Nat'l Taxpayers Union v. U.S. Soc. Sec. Admin.*, 376 F.3d 239, 243-44 (4th Cir. 2004); *GTE South, Inc. v. Morrison*, 199 F.3d 733, 742-43 (4th Cir. 1999); *Virginia v. United States*, 74 F.3d 517 (4th Cir. 1996). In *Virginia v. United States*, Judge Michael specifically rejected Virginia's contention that the Commonwealth could not receive "'meaningful judicial review' [in a court of appeals] unless it [could] develop a factual record in the district court." 74 F.3d at 524 (quoting *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 496 (1991)). As Judge Michael explained, meaningful review is available in a court of appeals because, inter alia, "the [statute] permits us to remand . . . for the development of whatever record we need to decide the issues before us on direct review." *Id.* at 525. Consistent with that view, the Seventh Circuit has rejected the argument that factual development in a district court is a necessary aspect of achieving meaningful appellate review. *See St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 628-29 (7th Cir. 2007) (con-

cluding that courts of appeals have exclusive jurisdiction under § 46110, along with various options, including remand, for dealing with inadequate administrative records).

Like our application of the Clean Air Act's exclusive jurisdiction provision at issue in *Virginia v. United States*, we would, in reviewing a § 46110 petition, have ample authority to remand if the agency record is found inadequate. *See* 49 U.S.C. § 46110(c) (authorizing court of appeals to order TSA Administrator to conduct further proceedings); *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985) ("[I]f the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course . . . is to remand to the agency for additional investigation or explanation."). At least two of our sister circuits have also concluded that § 46110 does not impair any due process rights of litigants. Those rulings were largely predicated on the proposition that a court of appeals possesses statutory authority to secure any essential or helpful supplementation of the record. *See Corbett v. United States*, 458 F. App'x 866 (11th Cir. 2012) (concluding that TSA's Checkpoint Screening SOP constitutes order under § 46110 and that exclusive jurisdiction in court of appeals does not contravene due process); *Roberts v. Napolitano*, 463 F. App'x 4 (D.C. Cir. 2012) (accordant ruling in consolidated appeals that included *Durso v. Napolitano*, 795 F. Supp. 2d 63 (D.D.C. 2011)). The First Circuit, facing a similar challenge to TSA's checkpoint procedures, has directed the filing of an administrative record and noted its willingness to contemplate a transfer of the district court proceeding to the court of appeals. *See Redfern v. Napolitano*, No. 11-1805 (1st Cir. May 2, 2012) (unpublished interim order).

There is nothing unique in Congress's adoption of § 46110, thereby vesting judicial review of orders of the TSA Administrator in an appropriate courts of appeals. Indeed, agency decisions are commonly subject to such jurisdiction-channeling provisions, and final agency actions are generally

reviewed in the courts of appeals. *See, e.g.*, 28 U.S.C. § 2342 (vesting exclusive jurisdiction in courts of appeals to review orders of various federal agencies); *see also* 16 Charles Alan Wright et al., *Federal Practice and Procedure* § 3940 (2d ed. 1996) (explaining history of appellate review of administrative agencies).

In seeking to rally support for their due process theory, the Plaintiffs invoke the Supreme Court's rulings in *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479 (1991), and *Reno v. Catholic Social Services, Inc.*, 509 U.S. 43 (1993). Neither of those decisions is helpful to the Plaintiffs. Each case involved a challenge to the constitutionality of procedures adopted by the Immigration and Naturalization Service in administering a legalization program, and each related to a judicial review provision very different from 49 U.S.C. § 46110. The Court construed each review provision to permit the plaintiffs to bring their challenge in the district court, partly in order to avoid an interpretation that would amount to "'the practical equivalent of a total denial of judicial review of generic constitutional and statutory claims.'" *Reno*, 509 U.S. at 64 (quoting *McNary*, 498 U.S. at 497). By contrast, as we have already discussed at length, § 46110 does not deprive the Plaintiffs of meaningful judicial review. *See Elgin*, 132 S. Ct. at 2139 n.11 (distinguishing *McNary*).[9]

---

[9]In their reply brief, the Plaintiffs invoke *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994). In that decision, which provided support for Judge Michael's opinion in *Virginia v. United States*, the Supreme Court explained that it "has upheld district court jurisdiction over claims considered wholly collateral to a statute's review provisions and outside the agency's expertise, . . . particularly where a finding of preclusion could foreclose all meaningful judicial review." *Id.* at 212-13 (citations and internal quotation marks omitted). Having already concluded that § 46110 does not foreclose meaningful judicial review, *Thunder Basin* moves us only to recognize that the Checkpoint Screening SOP falls squarely within the expertise of the TSA.

2.

The Plaintiffs make three other assertions relevant to their due process claim. First, they argue that § 46110(a)'s requirement that a petition for review be filed "not later than 60 days after the order is issued," absent "reasonable grounds" for a later filing, denies them due process. Relying on precedent from the D.C. Circuit, the district court in *Durso v. Napolitano* concluded that a TSA order has been "issued" only when it is "made public" and that, "if an order is kept secret, the sixty-day window period will be tolled until plaintiffs receive some notice of the order's contents or effect." *See* 795 F. Supp. 2d at 69 (citing *Avia Dynamics, Inc. v. FAA*, 641 F.3d 515 (D.C. Cir. 2011)). In a proper proceeding — that is, if a petition for review is properly filed in an appropriate court of appeals — the Plaintiffs might well advance such a tolling argument.

Second, the Plaintiffs assert that the objection aspect of § 46110(d) contravenes their due process rights. Pursuant to § 46110(d), a court of appeals may consider an objection "only if the objection was made" in proceedings before the TSA Administrator, unless there was a "reasonable ground" for not making it. Again, in a proper proceeding in a court of appeals, the Plaintiffs could contend that their absence from the agency's decision-making process constitutes a "reasonable ground" for the lack of an objection. *See Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 653 F.3d 1, 8 (D.C. Cir. 2011) (rejecting the TSA's assertion that § 46110(d) barred a challenge to AIT because the statute presupposes "an agency 'proceeding' where the party could advance its argument in the first instance").

Third, the Plaintiffs insist that application of the "substantial evidence" standard of review in a court of appeals proceeding will render their challenge constitutionally inadequate and offend due process. This contention is also premature. We observe that in rejecting a challenge to AIT scanners in a

§ 46110 petition for review, the D.C. Circuit discussed Fourth Amendment precedent and did not rely on the substantial evidence standard. *See Elec. Privacy Info. Ctr.*, 653 F.3d at 10-11. In any event, we will not speculate on how a court of appeals should address the substantial evidence standard of review in a § 46110 proceeding. In this appeal, we are only called upon to review the district court's ruling that § 46110 deprived it of subject matter jurisdiction. And, in these circumstances, we are satisfied that the district court was correct in its judgment.[10]

## IV.

Pursuant to the foregoing, the judgment of the district court is affirmed.

*AFFIRMED*

---

[10]Finally, in their quest for initial judicial review in the district court, the Plaintiffs maintain that the separation of powers concept rooted in our Constitution is offended by the jurisdiction-channeling provision of § 46110. They specifically invoke Chief Justice Marshall's admonition that "[t]he very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 163 (1803). While eloquent in the extreme, that observation of The Great Chief Justice simply has no relevance here.